**James H. HIGGASON, Jr., Petitioner–Appellant,**

v.

**Richard CLARK, Superintendent, Indiana State Prison, and Attorney General of Indiana, Respondents–Appellees.**

Nos. 91–2010, 91–2168, and 92–1473.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1992.*

Decided Jan. 14, 1993.

---

\* Nos. 91–2010 and 91–2168 were argued jointly.

After oral argument the court consolidated

Brandon Lawniczak (argued), Sidley & Austin, Chicago, IL, for petitioner-appellant.

Kermit R. Hilles, Wayne E. Uhl, Dist. Attys. Gen. (argued), Office of the Atty. Gen., Indianapolis, IN, for respondents-appellees.

Before POSNER and EASTERBROOK, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Indiana is holding James Higgason prisoner following a burglary conviction in No-

these appeals with No. 92–1473, which is submitted for decision on the basis of the briefs and record.

vember 1985. The court sentenced Higgason to 25 years' imprisonment after concluding that he is an habitual offender. Two prior convictions for unrelated felonies require habitual-offender designation in Indiana, and Higgason had three: theft in 1970, theft in 1972, and murder in 1975. Paroled from the murder sentence in 1985, Higgason was back in prison quickly on the burglary charge. On April 14, 1986, Indiana discharged Higgason from the murder sentence. Since then, only the 25-year term for burglary has supported his incarceration.

Higgason has embarked on a program of collateral litigation that illustrates the doctrine of abuse of the writ. See *McCleskey v. Zant*, — U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). The Supreme Court of Indiana affirmed his conviction but granted him leave to contest before the sentencing court the validity of the three felonies that had been used to enhance his term. *Higgason v. State*, 523 N.E.2d 399, 403 (Ind. 1988). Instead of doing this, Higgason immediately commenced an action in federal court under 28 U.S.C. § 2254. Higgason's state remedies were completely exhausted at this point, as *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), requires, only if he had abandoned any challenge to the validity of the three earlier convictions. See *id.* at 520–21, 102 S.Ct. at 1204–05 (opinion of O'Connor, J.). The district court denied this petition. *Higgason v. Duckworth*, 792 F.Supp. 1117 (N.D.Ind. 1990). We affirmed by unpublished order, No. 90–2704, 1992 WL 124469 (7th Cir. June 9, 1992), and the Supreme Court denied his petition for certiorari, — U.S. ——, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992).

Neither our opinion nor the district court's mentions the exhaustion problem—concrete rather than potential, for Higgason had commenced separate challenges to the 1970 theft conviction and the 1975 murder conviction. Two petitions, one in state court and one in federal, sought relief from the 1985 sentence on the ground that the 1970 theft conviction is invalid. Two more petitions, both in federal court, challenged the 1975 murder conviction. When filing these latter petitions in 1991, Higgason did not mention that he was no longer in custody under the murder sentence and that the validity of this conviction was significant only to the extent it had been used to enhance the burglary sentence.

Early in 1991 Higgason had at least five collateral proceedings under way, all necessarily directed to the conviction and sentence for burglary in 1985. Preventing such overlapping litigation is among the objectives of the complete-exhaustion requirement, and channeling all arguments into a single collateral attack is the principal role of the doctrine treating successive petitions as abuses of the writ. Surprisingly, Indiana did not move to dismiss any of the collateral challenges under *McCleskey* or *Rose*. Indeed, not until oral argument did we learn that custody under the 1975 murder conviction ended five years before Higgason filed his two petitions contesting it. The parties' briefs on appeal read as if Higgason were still serving the sentence imposed in 1975. On discovering that this is not so, we directed the parties to file memoranda concerning the effect of *Maleng v. Cook*, 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989), which holds that a person serving sentence A that has been enhanced because of expired sentence B is "in custody" only on sentence A. See *Fawcett v. Bablitch*, 962 F.2d 617 (7th Cir. 1992); *Lowery v. McCaughtry*, 954 F.2d 422 (7th Cir.1992); *Clay v. Bronnenberg*, 950 F.2d 486 (7th Cir.1991); *Crank v. Duckworth*, 905 F.2d 1090 (7th Cir.1990); *Lowery v. Young*, 887 F.2d 1309 (7th Cir. 1989). Because § 2254 authorizes challenges only to "custody" that violates the Constitution or laws of the United States, there appeared to be a jurisdictional problem. The parties' memoranda after oral argument brought to our attention, for the first time, the prior collateral attack on Higgason's burglary sentence and the pending challenges to the enhancement based on the 1970 theft conviction. The panel then consolidated all of Higgason's open appeals.

We start with Higgason's contention that the 1985 sentence is infirm because the 1970 theft conviction is invalid. Higgason pleaded guilty in 1970 and contends that the record does not establish that the judge informed him of his rights to confront his accusers and avoid self-incrimination. See *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). He presented this argument to the courts of Indiana in collateral proceedings begun in 1986. The trial court dismissed the challenge as untimely, and in an unpublished order the Court of Appeals of Indiana affirmed. *Higgason v. State*, No. 45A04–9009–PC– 410, 1991 WL 118797 (4th Dist. June 25, 1991). The court concluded that Higgason had no reason to wait 16 years to challenge the validity of this conviction, and that the state had been prejudiced by the delay: the police officers principally responsible for the investigation and arrest are deceased, and the owner of the stolen motorcycle could not be located. Having concluded that new proceedings would leave the state at a great disadvantage—and that Higgason, who filed collateral contests to other convictions earlier in the decade, had no excuse for leaving this one alone if indeed it is defective—the court held that any challenge is foreclosed.

■■■ Because Higgason's current petition under § 2254 is a successive collateral attack, he needs to establish actual innocence under the approach of *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), or at a minimum "cause and prejudice" for the default under the approach of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The district court dismissed the petition because Higgason had not shouldered either burden. Yet his brief on appeal scarcely mentions the procedural obstacle; he relies on *Boykin* as if this were a direct appeal from the 1970 conviction. *Boykin* does not authorize federal courts to disregard the difference between direct and collateral challenges, let alone to entertain successive collateral challenges to the same conviction. *Parke v. Raley*, —— U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). Whether we view Higgason's delay (and duplication) as a procedural default in state court, or instead apply the standards of Rule 9 of the Rules Governing Section 2254 Cases, the upshot is the same: Higgason has waited too long, without good reason, and to the state's detriment. The 1970 conviction is no longer open to challenge.

As for the 1975 conviction: Higgason named as respondent his custodian on the 1985 sentence, so the district court had jurisdiction notwithstanding *Maleng*. See *Lowery v. Young*, 887 F.2d at 1311. Because Higgason has never, to our knowledge, contended that the 1972 conviction is invalid—and because any new petition making such an argument would be a patent abuse of the writ—the validity of the 1975 conviction is not essential to sentencing as an habitual offender. Ind.Code § 35–50–2– 8(d). Still, Higgason could gain something if a court were to knock out the 1975 conviction. When all prior felonies are more than 10 years old, a court in Indiana may reduce the otherwise-mandatory term facing a repeat offender. Ind.Code § 35– 50–2–8(e). Do away with the 1975 conviction, and Higgason's most recent felony is 1972, more than a decade before the burglary of which he was convicted in 1985. (He spent that entire decade in prison. Lack of opportunity, rather than a decision to take the straight and narrow path, may explain the absence of intervening convictions, but under Indiana law this does not matter.) *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), holds that "misinformation of constitutional magnitude", *id.* at 447, 92 S.Ct. at 592— that is, reliance on an invalid prior conviction when selecting the length of a sentence—authorizes relief from the current sentence. Indiana does not point to any other doctrine that would insulate the 1975 conviction from review, cf. *Lowery v. McCaughtry*, 954 F.2d at 423–24; *United States v. Jones*, 977 F.2d 105, 109–11 (4th Cir.1992), and *id.* at 111–12 (Wilkinson, J., concurring), so we take up the merits of Higgason's contentions.

Indicted on a charge of first degree murder, Higgason pleaded guilty to second degree murder. The indictment charged that Higgason killed Al Lane with a shotgun.

Indiana law then provided: "Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree". Ind.Code § 35–1–54–1 (1975). The judge explained these elements to Higgason, who asked for a definition of malice. The judge replied: "Malice can be defined [as] ill will; malice can be inferred from the firing of a gun, the deadly weapon in a manner calculated to produce death." Later in the proceedings Higgason denied that he intended to slay Lane: "I had no intentions [sic] of killing; there was just a shooting involved.... I didn't intend to kill him." These statements underlie Higgason's argument that the record does not establish "strong evidence of actual guilt" that would support conviction despite what he now characterizes as a claim of innocence. See *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970). The Supreme Court of Indiana concluded that malice may be inferred from the information Higgason supplied, *Higgason v. State*, 435 N.E.2d 558, 559–60 (Ind.1982), and the district judge agreed. Higgason renews his contention that the colloquy does not contain "strong evidence" of malice. One might have supposed that Higgason was denying a purpose to kill Lane rather than denying that he harbored ill will toward Lane, but as nothing turns on this we do not pursue it.

After Higgason denied intending to kill Lane, the state judge asked some additional questions. We reproduce the exchange:

BY THE COURT: How far away from [Lane] were you when you fired the shotgun?

A. Twenty-five to thirty yards.

BY THE COURT: Did you not know that a shotgun would kill at that distance?

A. Yes.

[The prosecutor]: Your Honor, perhaps the defendant should be questioned as to how many times he fired the shotgun.

BY THE COURT: Did you fire the shotgun more than one time?

A. Yes.

BY THE COURT: How many times did you fire it?

A. Three times.

BY THE COURT: Three times, and how many times did you hit Mr. Lane, if you know?

A. Twice.

BY THE COURT: But you did not intend to kill Mr. Lane. Do you mind telling me what you intended to do? You intended to hurt him, did you not?

A. Right.

BY THE COURT: The intention to shoot another human being with a shotgun, firing the shotgun twice at thirty feet, you indicate—

[Defense counsel]: Thirty yards, twenty to thirty yards.

BY THE COURT: Thirty yards. Certainly indicates a purpose and intent requiring Murder in the Second Degree.

The Supreme Court of Indiana concluded that the judge's ultimate conclusion is a reasonable inference, and 28 U.S.C. § 2254(d) requires us to respect it, too, unless the Constitution commands otherwise.

Henry Alford pleaded guilty to a murder that, he insisted, he did not commit. A federal court issued a writ of habeas corpus, ruling that conviction on a plea of guilty requires an admission of guilt. The Supreme Court disagreed, writing that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." 400 U.S. at 31, 91 S.Ct. at 164. Further on in the opinion, the Court observed that the strong evidence of Alford's guilt established that his plea was voluntary—the best option open to him in a bad situation, for trial and a finding of guilt was apt to lead to his execution. *Id.* at 37, 91 S.Ct. at 167. Higgason takes this observation as establishing a constitutional requirement: *unless* the record contains "strong evidence" of factual guilt, the Constitution forbids the court to accept the plea. Not at all. "If A then B" does not imply "if not-A then not-B." *Alford* tells us that strong evidence on the record can show that a plea is voluntary; it does not hold that *only* strong evidence on the record permits a finding of voluntariness. And it certainly does not imply that the factual-basis requirement of Fed.R.Crim.P. 11(f) and its state-law counterparts comes from the Constitution. See *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *McCarthy v. United States*, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). Judges must guard against the assumption that whatever is familiar is also

essential. Putting a factual basis for the plea on the record has become familiar as a result of statutes and rules, not as a result of constitutional compulsion. The Constitution's standard "was and remains whether the plea represents a voluntary and intelligent choice". *Alford*, 400 U.S. at 31, 91 S.Ct. at 164. Whether a choice is informed and reached without inappropriate pressure—that is, whether it is voluntary—depends on the information known and options open to the defendant, including what he has learned out of court. E.g., *Henderson v. Morgan*, 426 U.S. 637, 647, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976).

■ A state may require its judges to engage in extended colloquies designed to elicit factual support for pleas of guilty. Putting the basis on the record not only helps the defendant make a wise choice but also prevents subsequent litigation in which the defendant denies knowing some vital bit of information. Shortcomings in compliance with such requirements do not entitle prisoners to collateral relief in federal court. On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences. *Parke*, ⸺ U.S. at ⸺, 113 S.Ct. at 520; *Henderson*, 426 U.S. at 647, 96 S.Ct. at 2258. For example: What kind of shot did Higgason use? Some kinds are more deadly than others. For all we know, Higgason pleaded guilty because he knew that the prosecution could show that he chose the most lethal ammunition. Of course this is speculation, but as we have said the state receives the benefit of reasonable inferences. Similarly, we must draw inferences in the state's favor from the exchange:

BY THE COURT: Did you not know that a shotgun would kill at that distance?
A. Yes.

Higgason treats "yes" as a denial of intent to kill: yes, he did "not know" that the gun would kill. Yet in colloquial speech a "yes" to a "do you not . . . ?" acknowledges the main proposition. "Don't you know that it is dangerous to jump off a cliff?" "Yes" means, "yes, I know this." "You intended to hurt him, did you not?" "Right" means, "yes, I intended to hurt him." Cf. Paul Grice, *Studies in the Way of Words* 26–37 (1989); Geoffrey P. Miller, *Pragmatics and the Maxims of Interpretation*, 1990 Wis.L.Rev. 1179.

■ Higgason does not contend that his plea was involuntary. He has not offered to supplement the record with evidence that the ammunition in the shotgun was unlikely to kill at 25 yards, or that he believed the risk of death small. His entire position depends on persuading us that all gaps and ambiguities in the record count against the state. Judgments are presumed valid, however, and *Parke* emphasizes that one who seeks collateral relief bears a heavy burden. Higgason has not acknowledged, let alone discharged, his burden.

■ A few closing words about precedent are in order. Counsel for Higgason writes:

This Court has recognized the *Alford* rule and made clear that a guilty plea accompanied by an assertion of innocence is properly accepted only if the record before the trial judge contains strong evidence of guilt. *See, e.g., United States v. Cox*, 923 F.2d 519 (7th Cir. 1991); *United States v. Johnson*, 612 F.2d 305 (7th Cir.1980); *United States v. Davis*, 516 F.2d 574 (7th Cir.1975).

This passage, like the rest of Higgason's presentation, reflects confusion between necessary and sufficient conditions, and between Rule 11 and the Constitution. "Strong evidence of guilt" may suffice to sustain a conviction on an *Alford* plea, and may be essential under Rule 11, but it is not necessary to comply with the Constitution. In *Cox* the district court declined to accept the plea, deeming the admission of guilt inadequate. We held that the district judge did not abuse his discretion, while adding that accepting the plea would have been an appropriate exercise of discretion. 923 F.2d at 523–26. *Davis* discusses the factual-basis requirement of Rule 11, not the voluntariness requirement of the Constitution. *Johnson* observes that the Constitution "does not require the establishment in all cases of a factual basis for a guilty plea" but adds that "where it is impossible to find guilt from the facts stated as the factual basis for the plea" the court is apt to find the plea involuntary. 612 F.2d at 309. It is hardly "impossible" to infer guilt from the record of Higgason's plea.

AFFIRMED.