**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ronald L. TUNNING, Defendant–**
**Appellant.**

No. 95–5097.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 8, 1995.

Decided Nov. 3, 1995.

Frederick A. Stine, V, Asst. U.S. Atty. (argued and briefed), Covington, KY, for plaintiff-appellee.

Carol A. Serelson (argued and briefed), Cheyenne, WY, for defendant-appellant.

Before: KEITH, RYAN, and BATCHELDER, Circuit Judges.

RYAN, Circuit Judge.

The defendant, Ronald Tunning, appeals from the judgment and sentence entered after he pleaded guilty to one count of credit card fraud in violation of 18 U.S.C. § 1029(a)(2). Tunning makes several arguments on appeal, but we address only the one we find dispositive: whether Tunning's guilty plea record reflects a sufficient factual basis to support the guilty plea as required by Fed.R.Crim.P. 11(f). We hold that it does not and we vacate Tunning's conviction.

## I.

On June 10, 1987, a grand jury in Covington, Kentucky, returned an indictment against Tunning charging him with six counts of credit card fraud and one count of fraudulent use of a social security number. Count 1 of the indictment charged Tunning with using an unauthorized American Express card between September 1984 and September 1985. In exchange for a guilty plea to this count, the government agreed to dismiss the remaining counts of the indictment. After pleading guilty, Tunning remained on bond to await sentencing.

Rather than appear for sentencing, Tunning absconded and eventually made his way to Nebraska, where, in 1994, he participated in a bank fraud scheme involving the unlawful alteration of checks. While an indictment for bank fraud was imminent in Nebraska, Tunning decided to return to Kentucky. He later claimed that his intention was to surrender for sentencing on his 1988 credit card conviction. Before doing so, however, on May 8, 1994, he was stopped for a traffic violation near Covington, Kentucky, and a routine check revealed the outstanding fugitive warrant against him. He was arrested and turned over to federal authorities.

After the Nebraska grand jury returned a bank fraud indictment against Tunning, that case was transferred to the Eastern District of Kentucky. Tunning pleaded guilty to this new charge, and on January 3, 1995, he was sentenced for both the 1988 credit card fraud conviction and the 1994 bank fraud conviction. The credit card fraud conviction was not subject to the Sentencing Guidelines, and the district court imposed the statutory maximum term of imprisonment, which was 10 years, and also ordered restitution in the amount of $24,404.06. The bank fraud conviction was subject to the Sentencing Guidelines, and the appropriate sentence range was calculated to be 10 to 16 months. The district court sentenced Tunning to the minimum sentence of 10 months, to run consecutively to the 10 year sentence for the credit card fraud conviction.

Tunning appeals only the 1988 credit card fraud conviction and only the sentence imposed for that offense.

## II.

### A.

#### 1.

In 1988 when he was facing the seven count indictment, Tunning desired to plead guilty in order to avoid a trial, but he also desired to avoid stating on the record the factual basis for his guilty plea. To accommodate Tunning's wishes, the district court allowed the factual basis for the plea to be established by the prosecutor's presenting a summary of what the government's evidence would have shown at trial.

The parties call Tunning's plea an *"Alford* plea,"* referring to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In *Alford,* a state defendant had been indicted for first-degree murder, which was a capital offense. The defendant claimed that he was innocent, but when his attorney interviewed the potential witnesses the defendant claimed would substantiate his innocence, each witness "gave statements that strongly indicated [the defendant's] guilt." *Id.* at 27, 91 S.Ct. at 162. In the face of strong evidence of his guilt and no evidence of his innocence, the defendant's attorney advised Alford to plead guilty to second-degree murder, which was a non-capital offense. *Id.* Alford pleaded guilty, and the prosecutor called three witnesses to establish the factual basis for the plea: a police officer who summarized the state's case and two witnesses who testified as to what they had seen. Although no one had seen the actual killing, the witnesses testified that the defendant had left his house with a gun promising to kill the victim and that the defendant returned sometime later "with the declaration that he had carried out the killing." *Id.* at 28, 91 S.Ct. at 162–63. The defendant took the stand and testified that he had not committed the crime but that he was pleading guilty to avoid the death penalty. *Id.* On appeal, the defendant claimed that his conviction was unconstitutional because his guilty plea had not been voluntarily and knowingly made. *Id.* at 29, 91 S.Ct. at 163. The Supreme Court held that

> while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.
>
> Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the

record before the judge contains strong evidence of actual guilt.

*Id.* at 37, 91 S.Ct. at 167.

■ In its strictest sense, then, an *"Alford* plea"* refers to a defendant who pleaded guilty but maintained that he is innocent. *See United States v. Harlan,* 35 F.3d 176, 180 n.1 (5th Cir.1994). Tunning is not such a defendant because he never stated on the record that he was innocent. The Federal Rules of Criminal Procedure recognize only three pleas: Fed.R.Crim.P. 11(a)(1) states that "[a] defendant may plead not guilty, guilty, or nolo contendere. If a defendant refuses to plead …, the court shall enter a plea of not guilty." The so-called *"Alford* plea"* is nothing more than a guilty plea entered by a defendant who either: 1) maintains that he is innocent; or 2) without maintaining his innocence, "is unwilling or unable to admit" that he committed "acts constituting the crime." *Alford,* 400 U.S. at 37, 91 S.Ct. at 167. Because we believe it is important to bear in mind that in either situation the defendant's plea is guilty, we will use the term *"Alford*-type guilty plea,"* rather than merely *"Alford* plea."*

■ We also note that there should be no confusion regarding the difference between an *Alford*-type guilty plea and a plea of *nolo contendere.* In *United States v. Harlan, supra,* the district court had interchangeably used the terms "nolo" and *"Alford"* during the sentencing hearing and had indicated that the judgment was pursuant to a "nolo" plea. The court of appeals stated that "[a]lthough an *Alford* plea and a plea of nolo contendere are not technically synonymous, resolution of this apparent discrepancy is not necessary to the outcome of this appeal, and the court assumes, as do the parties, that [the defendant] entered an *Alford* plea." 35 F.3d at 180 n. 1. *See also Crofoot v. United States Gov't Printing Office,* 761 F.2d 661, 665 & n. 1 (Fed.Cir.1985). Fed.R.Crim.P. 11(b) states that "[a] defendant may plead nolo contendere only with the consent of the court" and that such consent may be given "only after due consideration of the views of the parties and the interest of the public in the effective administration of justice." Rule

11 imposes no similar requirement for the defendants who plead guilty but refuse to admit to facts substantiating that guilt. An *Alford*-type guilty plea is a guilty plea in all material respects.

## 2.

Tunning argues that the district court failed to ascertain that a sufficient factual basis supported his guilty plea. Fed. R.Crim.P. 11(f) provides: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

 In *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court adopted a rule of strict compliance with the procedures of Rule 11. This rule was modified in 1983 with the adoption of Rule 11(h), which provides that variations from the requirements of Rule 11 are excusable so long as they do not affect the "substantial rights" of the defendant. *See, e.g., United States v. Goldberg,* 862 F.2d 101 (6th Cir.1988). However, this "harmless error" analysis does not apply to appellate review of the sufficiency of the factual basis supporting the guilty plea. " '[W]hile the exact method of producing a factual basis on the record is subject to a flexible standard of review, the need to have some factual basis will continue to be a rule subject to no exceptions.' " *Id.* at 106 (quoting *United States v. Fountain,* 777 F.2d 351, 357 (7th Cir.1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986)).

 The requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes. *Higgason v. Clark,* 984 F.2d 203, 208 (7th Cir.), *cert. denied,* ⸺ U.S. ⸺, 113 S.Ct. 2974, 125 L.Ed.2d 672 (1993). "The purpose of this requirement is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense." *United States v. Keiswetter,* 860 F.2d 992, 995 (10th Cir.1988), *modified as to remedy,* 866 F.2d 1301 (10th Cir.1989) (*en banc*).

We must first decide whether the required factual basis is different when a defendant enters an *Alford*-type guilty plea. Relying on the language of *Alford,* Tunning argues that when a defendant enters an *Alford*-type guilty plea, the district court may accept the guilty plea only if the factual basis is established by "strong evidence." We conclude that Tunning has misread *Alford.* The *Alford* Court's comment regarding "strong evidence of actual guilt" was made in the context of differentiating a defendant who refuses to admit his conduct, such as Tunning, from a defendant who protests his innocence, such as the defendant in *Alford.* Only for the latter defendant must there be "strong evidence." "If a defendant enters a guilty plea *while continuing to assert his innocence,* the district court may accept [the guilty plea] if there is 'a strong factual basis.' " *United States v. Alber,* 56 F.3d 1106, 1110 (9th Cir.1995) (emphasis added) (quoting *Alford,* 400 U.S. at 37–38, 91 S.Ct. at 167–68). This requirement of "strong evidence" enables a court to determine that the defendant's guilty plea is voluntary and therefore not constitutionally infirm. *See Higgason,* 984 F.2d at 207.

The Fourth Circuit has rejected the argument that an *Alford*-type guilty plea requires a "strong factual basis." *United States v. Morrow,* 914 F.2d 608, 611 (4th Cir.1990). The court concluded that "any Rule 11 proceeding requires that a factual basis for the plea be established and we are unwilling to place more requirements in the context of an *Alford* plea." *Id.* at 612. The Seventh Circuit concluded that "Rule 11 does not distinguish between factual material supplied by the defendant and that supplied by the prosecutor." *United States v. Ivory,* 11 F.3d 1411, 1415 (7th Cir.1993).

 We hold today that there is no difference in the requirements of Fed.R.Crim.P. 11(f) for a defendant who pleads guilty and admits to acts constituting the crime and a defendant who pleads guilty but who either 1) affirmatively protests his innocence or 2) refuses to admit to acts constituting the crime; that is, either of the two possible *Alford*-type guilty pleas. "[S]trong evidence of actual guilt" is not necessary to satisfy

Rule 11(f), even where a defendant protests his innocence. Just as for any guilty plea, when a defendant desires to enter an *Alford*-type guilty plea, Fed.R.Crim.P. 11(f) requires only that the district court "satisfy it[self] that there is a factual basis for the plea."

 The ideal means to establish the factual basis for a guilty plea is for the district court to ask the defendant to state, in the defendant's own words, what the defendant did that he believes constitutes the crime to which he is pleading guilty. So long as the district court ensures that the defendant's statement includes conduct—and mental state if necessary—that satisfy every element of the offense, there should be no question concerning the sufficiency of the factual basis for the guilty plea. This "ideal" method is by no means the only method, however. "We recognize that the district court may determine the existence of the Rule 11(f) factual basis from a number of sources, including a statement on the record from the government prosecutors as well as a statement from the defendant." *Goldberg,* 862 F.2d at 105. And, of course, it is possible that witnesses may be called to state the factual basis with the defendant providing confirmation. Our inquiry turns, then, to whether the record of the plea hearing in this case establishes a factual basis for all the elements of credit card fraud.

Count 1 of the indictment, the count to which Tunning pleaded, charged Tunning under 18 U.S.C. § 1029(a)(2). That section makes it a crime if someone "knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period." 18 U.S.C. § 1029(a)(2). The statute also requires that the act affect interstate or foreign commerce. This offense, then, has four elements: 1) the intent to defraud; 2) the knowing use of or trafficking in an unauthorized access device; 3) to obtain things of value in the aggregate of $1,000 or more within a one-year period; and 4) an affect on interstate or foreign commerce. The definition of "access device" includes a credit card. 18 U.S.C. § 1029(e)(1). An "unauthorized access de-

vice" is defined as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." 18 U.S.C. § 1029(e)(3).

In order to establish the factual basis of Tunning's guilty plea to Count 1, the prosecutor stated:

Your Honor, the United States would prove that on or about September 15, 1984, Mr. Tunning obtained an American Express credit card in the name of Timothy Kennedy, and he obtained it using certain false information. He used his own Social Security number. He used—there is a real Tim Kennedy with whom Mr. Tunning has been associated before. He used Mr. Kennedy's actual date of birth on the application for that credit card.

There was also some question in our mind, and the United States would have offered some proof as to whether or not the address he actually put on the application was in fact a real address for him and whether the income, the annual income that he reported on that application was in fact expected to be received by him. [Defense counsel] and I have discussed the proof the defendant would have put on in that—on those issues. However, that would have been part of the United States' argument, your Honor.

Further the United States would have proven that there were a number of other cards, I believe twenty other cards that were obtained from this individual in the name of Tim Kennedy. So some of the others had also—those applications that we could find the false date of birth had been used on those as well. With respect to the American Express card, a total bill of somewhere between just short of [$]17,000 and just over $18,000 was run up on it. It was never paid.

There was I suppose, depending on how one views the situation, some attempt to make some type of payment on the card. But from the stand—from the viewpoint of the United States, your Honor, the attempt was either a sham attempt or no real attempt was made on the card. The American Express finally wrote the account off. There were a variety of facts

and circumstances surrounding the entire indictment that would have gone to the issue of intent.

Mr. Tunning in one of the counts involved—and I'm sure the Court's aware of this though it would have been in two of the counts dismissed that he did use on a driver's license that he gave to Covington police when he was leaving Covington when he was arrested, a driver's license under the name of Tim Kennedy that was obtained from the state of Virginia using a real Tim Kennedy's date of birth, a real Tim Kennedy's Social Security number, representing himself to be Tim Kennedy and that to be true information.

Your Honor, there were a variety of facts such as that. There was also some evidence the United States would have sought to introduce under [Fed.R.Evid.] 404(b) outside the indictment that we would have sought to introduce on the issue of the intent. But in short, Your Honor ... that is the case.

This statement was the only evidence in the record to support Tunning's guilty plea, and we conclude that this statement is insufficient to establish the factual basis required by Rule 11(f).

The American Express card is an "access device" as that term is used in the statute, but § 1029(a)(2) requires that Tunning must have knowingly used "an *unauthorized* access device" and that use must have been made with the "intent to defraud." An access device can be "unauthorized" in a variety of ways. However, in this case, Tunning obtained the credit card using false information rather than obtaining a card that was "lost, stolen, expired, revoked, [or] canceled." § 1029(e)(3). Therefore, the only way that the government could establish that the American Express card was "unauthorized" was by showing that Tunning had "obtained [it] with intent to defraud." *Id.* As to Count 1, then, the government needed to establish that Tunning had the intent to defraud both when he obtained the American Express card and when he used the card to obtain goods or services.

▆ Considering the need to establish a twofold intent to defraud in a case such as

this, we are puzzled by the government's agreement to proceed with an *Alford*-type guilty plea. It seems to us that this is the type of case in which an *Alford*-type guilty plea would be the least appropriate. The only available direct evidence of the defendant's state of mind would be the defendant's own statement as to what he was thinking. Any other evidence could provide—at best— only circumstantial evidence of the defendant's state of mind. The government argues that this court can infer that Tunning had an intent to defraud when he obtained the American Express card using a false name and a false date of birth. Although we agree that a rational fact finder could infer an intent to defraud from such evidence, in the context of a challenge to the factual basis supporting a guilty plea, we have previously rejected a request by the government to infer a "critical element" of the offense charged. *Goldberg*, 862 F.2d at 106.

In *Goldberg*, the defendant was charged with misprision of a felony, a crime for which a necessary element is that the defendant took "affirmative steps to conceal the crime of the principal." *Id.* The defendant admitted that he knew the principal, a pharmacist, had been adding items to prescriptions that the defendant, a physician, had written, and the defendant knew the principal's acts were a federal crime because Medicaid paid for these unprescribed items. The defendant admitted that he did not report this crime to the federal authorities. The district court asked if the defendant had "conceal[ed]" his knowledge, to which the defendant answered "Yes." *Id.* at 105. On appeal the government argued that from the "totality of the circumstances," including the defendant's education and his statement that he understood the charge against him, this court should infer that when the defendant admitted that he had concealed his knowledge the defendant had meant that he had "actively" concealed his knowledge, and that from this "active concealment" the court could infer that the defendant had taken "affirmative steps to conceal the crime of the principal." *Id.* at 105–06. We declined the government's invitation, stating that "[i]n our judgment, to permit the district court to infer a factual

basis in the absence of a record demonstrating the existence of a factual basis would tend to negate the well-established safeguards inherent in the Rule 11(f) mandate." *Id.* at 106.

In his narrative describing the factual basis for the plea, the prosecutor identified, somewhat equivocally, two acts by Tunning as establishing the factual basis: 1) Tunning obtained the American Express card using a false name and a false date of birth; and 2) Tunning obtained twenty other cards in the name of another person. The prosecutor also stated that Tunning *may have* used a false address and a false amount of income in the application for the American Express card. The prosecutor added that although Tunning might be able to show that some payments had been made on the American Express card, "from the viewpoint of the United States, your Honor, the attempt was either a sham attempt or no real attempt was made on the card."

As to Tunning's intent, the government stated that "[t]here were a variety of facts and circumstances surrounding the entire indictment that would have gone to the issue of intent." The government explicitly mentioned only one such fact or circumstance, however: the prosecutor noted Tunning had used a driver's license bearing a false name and date of birth, and that Tunning had told a police officer that he was this other person. The prosecutor then stated that "there were a variety of facts such as that. There was also some evidence the United States would have sought to introduce under [Fed.R.Evid.] 404(b) outside the indictment that we would have sought to introduce on the issue of the intent." The record gives no indication of what that 404(b) evidence might have been.

As was the case in *Goldberg,* the record in this case provides, at best, circumstantial evidence that might enable one to infer that Tunning obtained the American Express card with the intent to defraud and that he subsequently used the card with the intent to defraud. But the record in this case is even weaker than the record in *Goldberg,* because in *Goldberg* the factual basis was established by the defendant's own statements. The record in this case contains only bare assertions

by the government that *evidence at trial* would have established certain facts. What is wholly lacking from the government's statement is any indication of *what evidence* supports those facts. The Ninth Circuit recently stated that "[t]o establish a factual basis for the plea, the court may consider all of the evidence before it at the time of judgment.... 'The court need not be convinced beyond a reasonable doubt tha[t] an accused is guilty. It need only be convinced that there is sufficient evidence to justify the reaching of such a conclusion.'" *Alber,* 56 F.3d at 1110 (quoting *United States v. Neel,* 547 F.2d 95, 96 (9th Cir.1976) (*per curiam* )). This requirement "ensure[s] the accuracy of the plea through some evidence that a defendant actually committed the offense." *Keiswetter,* 860 F.2d at 995.

In our judgment, a bare statement from the prosecutor that he would have proven that the defendant acted with the intent to defraud does not ensure "through some evidence" that the plea is accurate.

We hold that where, as in this case, the defendant pleads guilty but refuses to admit to conduct that demonstrates a factual basis for the plea, if the government undertakes to establish the factual basis by reciting what facts it would have proven at trial, the prosecutor must also identify the evidence it has to prove those facts. That is not to say that the narrative must describe the *method* by which the evidence would be introduced—whether, for example, through live witnesses or documentation—but the recitation, if couched in language of what the prosecutor "can" or "would" prove, must identify specific evidence which constitutes the proof. If the government fails to recite specific evidence upon which it would have relied, then we see no way for a district court to satisfy itself that " 'sufficient evidence ... justif[ies] ... reaching' " the conclusion that the defendant's guilty plea is accurate. *Alber,* 56 F.3d at 1110 (quoting *Neel,* 547 F.2d at 96).

In summary, we hold that Tunning's guilty plea is not supported by a sufficient factual basis. As we stated in *Goldberg,* an insufficient factual basis can never be harmless

error, so we vacate Tunning's conviction under 18 U.S.C. § 1029(a)(2).

### 3.

 Tunning argues that the appropriate remedy in this case would be to vacate his guilty plea and allow him to plead anew. We disagree. In *Goldberg,* 862 F.2d at 106, we adopted the Third Circuit's "two remedy" rule for disposing of appeals in which the court finds error in the taking of the guilty plea: In cases where the error involves a problem with the district court's state of mind, for example where, as here, the record does not include sufficient information from which the district court could find a factual basis for the guilty plea, the appropriate remedy is to remand to the district court for further proceedings to create the appropriate record. In a case where the error involves the defendant's state of mind, such as when the district court failed to determine that the defendant was competent and voluntarily entering a guilty plea, the appropriate remedy is to vacate the plea and remand so that the defendant can plead anew. This case is one of the former. Rule 11(f) establishes a requirement for the district court, that is, it must satisfy itself that a sufficient factual basis exists. Where, as in this case, we conclude that the record is not one upon which the district court could have satisfied itself, then the appropriate remedy is to remand the case with instructions to further develop the record. If the government is unable to establish a factual basis for all the elements necessary to prove credit card fraud under § 1029(a)(2) through its proffer of evidence, then the factual basis must be established in some other way, or the district court may not accept Tunning's guilty plea.

### B.

Having concluded that Tunning's conviction must be vacated, we decline to address the remainder of Tunning's assignments of error as they are moot. However, for the benefit of the district court, we note that upon review of Tunning's sentence, we have noticed that the district court committed plain error when it ordered Tunning to pay restitution in the amount of $24,404.06. This amount was calculated in the presentence investigation report by totaling the losses from three different credit cards: $16,974.82 from American Express; $5,924.74 from Marine Midland Bank Visa; and $1,504.50 from Citi–Bank Visa. The fraudulent use of the American Express card was the offense conduct charged in Count 1 of the indictment, the only count to which Tunning pleaded guilty. The use of the Marine Midland Bank Visa was the conduct charged in Count 2, and the use of the Citi–Bank Visa was the conduct charged in Count 3. Both Counts 2 and 3 were dismissed on the motion of the government after Tunning was sentenced on Count 1. The use of the American Express charge, and the resulting loss of $16,974.82, is the only conduct for which Tunning was convicted.

 Tunning could have been required to pay restitution under two different statutes. The first is the Federal Probation Act (FPA), 18 U.S.C. § 3651, repealed by Pub.L. No. 98–473, § 212(a)(2), 98 Stat.1987 (1984). Although the FPA was repealed by the Sentencing Reform Act of 1984, the FPA may still be applied to offenses committed prior to the adoption of the guidelines, such as Tunning's 1985 credit card fraud. *See United States v. Guardino,* 972 F.2d 682, 686 (6th Cir.1992). The second statute authorizing restitution is the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. §§ 3663–64. Where, as in Tunning's case, the district court does not state under which statute it is ordering restitution, the appellate court should assume that restitution was ordered under the VWPA. *Guardino,* 972 F.2d at 686. Even without this "default rule," it appears that the district court had the VWPA in mind when ordering restitution. On page 11 of the presentence investigation report, the probation officer indicated that 18 U.S.C. § 3663, that is, the VWPA, was the statutory authority under which restitution could be ordered.

 In *Hughey v. United States,* 495 U.S. 411, 413, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990), the Supreme Court held that under the VWPA a sentencing court could order restitution "only for the loss caused by the specific conduct that is the

basis of the offense of conviction." Immediately after the Court's decision in *Hughey,* Congress amended the VWPA to allow sentencing courts to order restitution for conduct that was not the basis of the offense of conviction when the defendant agreed to this as a term in a *plea agreement. Guardino,* 972 F.2d at 687. The version of the statute that is applicable to the defendant is the one in effect at the time of sentencing. *Id.*

■ Although at the time Tunning was sentenced in 1995, the amended version of the VWPA was in effect, the amendment's rule does not apply to Tunning because there was no plea agreement other than the understanding that if Tunning pleaded guilty to Count 1, the government would move to dismiss the other six counts. Consequently, the district court only had the authority to order restitution in the amount of loss resulting from the conduct that formed the basis of the offense of conviction, that is, Count 1, which was based on the fraudulent use of the American Express card that resulted in a $16,974.82 loss. The district court therefore erred when it ordered Tunning to pay an additional $7,429.24 representing losses that resulted from conduct that formed the bases of Counts 2 and 3, which were eventually dismissed.

We recognize that what we have said on this sentencing issue is a classic example of *obiter dictum;* we offer it to assist the district court, should resentencing be in order.

### III.

Because we conclude that Tunning's guilty plea was not supported by a sufficient factual basis as required by Fed.R.Crim.P. 11(f), we **VACATE** his conviction and **REMAND** the case to the district court for further development of the record.