NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1200n.06

No. 11-6477

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

        v.

VIKKI CASTEEL,

    Defendant-Appellant.

**FILED**
*Nov 20, 2012*
DEBORAH S. HUNT, Clerk

On Appeal from the United
States District Court for the
Western District of Tennessee

Before:  GUY, SUTTON, and COOK, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.**     Defendant Vikki Casteel was convicted after a jury trial of conspiracy to possess with intent to distribute and distribution of a controlled substance in violation of 21 U.S.C. § 846.  On appeal Casteel argues:  (1) that it was error for the district judge to reject her guilty plea made pursuant to a Rule 11 plea agreement; (2) that the court allowed improper testimony at trial that rose to the level of unfair prejudice; and (3) that the evidence at trial was insufficient to support her conviction.  Finding no error, we affirm.

**I.**

Defendant was indicted as being part of a large marijuana distribution conspiracy. Defendant faced a mandatory minimum sentence of 10 years of imprisonment.  After initially

pleading not guilty, the defendant sought to change her plea. During the change of plea hearing, the district judge carefully followed the Rule 11 plea procedures. As part of the colloquy, after reviewing the elements required to prove the conspiracy charge, the defendant was asked to provide a factual basis for her guilty plea. Defendant responded by admitting to transporting, receiving, and renting space in her garage for pallets of containers of liquid asphalt in which marijuana had been concealed. The district judge then asked, "when did you find out they were shipping marijuana in these [containers]?" Defendant answered, "The day that I was arrested and they cut open the bottles in front of the – the DEA agents cut open the bottles in front of me. . . ." The government gave a statement of the proofs it would offer at trial.

After that, however, defendant again denied any knowledge or participation in a drug conspiracy. She explained, "it's important that you understand that I would not have risked that if I had known something was going on." This prompted the district judge to again inquire of Casteel when she had first become aware of any illegal activity. Casteel answered: "I didn't know until they had me sitting in a chair in the driveway behind the house and the DEA agents were cutting the bottles open and pouring the liquid out on the ground and [asking] do you know what those black blocks are?" Given this answer, the judge indicated that it looked like a trial would be necessary but recessed the proceedings to give the defendant a chance to confer with her attorney. When the court reconvened the judge asked the defendant what she wanted to do and her attorney replied: "It appears that we will have a trial setting."

Rule 11 requires that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." FED. R. CRIM. P. 11(b)(3). "'The purpose of this requirement is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense.'" *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (citation omitted). Knowledge of the conspiracy was an essential element of the offense. *See United States v. Warman*, 578 F.3d 320, 332 (6th Cir. 2009). Here, Casteel consistently and repeatedly denied any knowledge of the conspiracy, much less an intent to join it. Under these circumstances, the district judge's rejection of the plea was not an abuse of discretion.

## II.

We elect to address next the claim that the evidence was insufficient to support a conviction. We do so because were we to conclude that the evidence, including that objected to, was insufficient to support a conviction, it would not be necessary to consider the evidentiary issues raised. In reviewing this claim, the relevant inquiry is whether "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Applying this standard, our conclusion is that the evidence was more than sufficient to support the jury's verdict. No detailed review of the evidence is necessary to reach this conclusion.

We start with the fact that two of defendant's coconspirators, Tim Bailey and Armando Prado, had entered pleas and were cooperating witnesses for the government.

Prado was the person who recruited the defendant to be part of the conspiracy by assisting in the transportation of multiple loads of marijuana. He had personal knowledge of her involvement including not only picking up and delivering loads of marijuana, but also knowingly storing some of the marijuana at her residence. Bailey testified to picking up a load of marijuana at defendant's residence in her presence. The testimony of these two witnesses alone would support the defendant's conviction.

There was considerable other evidence implicating defendant, however, which we discuss in connection with the third issue defendant raises on appeal.

## III.

The principal source of supply in this conspiracy was Miguel Munoz, who was the subject of extensive and protracted wiretap surveillance involving Munoz discussing the operation of the conspiracy with other members. Many of these calls were played for the jury after the government and the defense had stipulated to the accuracy of both the recordings of the calls and the English language transcripts of the calls that were in Spanish. DEA Agent Rod Waller was the witness through whom these calls and transcripts were introduced. Some of the calls included the use of code words and Waller, over objections, was allowed to offer an explanation of these code words.

Part of the code word explanations referred to a female member of the conspiracy who was referred to as "Pelitos" or "Tia." Although these words certainly did not identify the defendant, or any other specific person for that matter, federal agents, on several occasions, saw her carry out the tasks that were being assigned to "Pelitos" or "Tia" during intercepted

phone calls. For example, several calls related to a female renting a cargo van for Munoz to be used for transporting marijuana. After one such call, defendant was observed being picked up by Munoz and dropped off at an Enterprise car rental agency where she rented, signed for, and drove away in a cargo van. A few days later, defendant was observed in a McDonald's restaurant with the van parked outside. Prado was parked in a nearby vehicle. Intercepted calls between Prado and Munoz revealed that they were awaiting the arrival of a third party who would have some narcotics. In the meantime the defendant had returned home in the van, but shortly later drove back to a Kroger store that was near the McDonald's. The intercepted phone calls had discussed that the female would be sent to the Kroger shortly before defendant left for that destination.

After arriving at the Kroger store, defendant went inside and a few minutes later an unidentified male drove the van away. The male was followed to a warehouse where he was observed loading items into the van. He then returned to the Kroger's, left the van there, and a few minutes later the defendant came out of the store and drove the van home. Once home, defendant was shortly joined by Munoz and Prado.

The record is replete with several other similar and equally incriminating events involving the defendant. The only issue for our review is whether the court erred in allowing Waller to give his opinion that the "Pelitos" or "Tia" referred to was a reference to the defendant. Given the precise symmetry between what "Pelitos" or "Tia" was instructed to do and the surveilled actions of the defendant carrying out these assignments, there is little doubt that Waller had a proper foundation for opining as he did. Federal Rule of Evidence

701 provides for the admission of lay opinion testimony if it is rationally based on the perception of the witness. The support offered by Waller in support of his opinion certainly meets this criterion. Additionally, the judge cautioned the jury that this was only the "opinion" of Waller and it was their call as to whether the defendant was the one being referred to in the surveilled calls.

We find no abuse of discretion by the district judge in allowing Waller to testify as he did.

**AFFIRMED**.