RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0145p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

ADAM EGGERS,

*Petitioner-Appellant,*

*v.*

No. 15-3961

WARDEN, LEBANON CORRECTIONAL INSTITUTION,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:14-cv-00443—Thomas M. Rose, District Judge.

Argued: June 14, 2016

Decided and Filed: June 21, 2016

Before: SILER, ROGERS, and SUTTON, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Jeffrey M. Brandt, ROBINSON & BRANDT, P.S.C., Covington, Kentucky, for
Appellant. Hilda Rosenberg, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati,
Ohio, for Appellee. **ON BRIEF:** Jeffrey M. Brandt, ROBINSON & BRANDT, P.S.C.,
Covington, Kentucky, for Appellant. Hilda Rosenberg, OFFICE OF THE OHIO ATTORNEY
GENERAL, Cincinnati, Ohio, for Appellee.

———————————

## OPINION

———————————

SUTTON, Circuit Judge. Adam Eggers and Dustin Bryant each sought the affections of
the same woman, Julie Snyder, and each went to great lengths to be the winning suitor. In an
unfortunate effort to end the feud, Eggers fired four shots into a home where he thought Bryant

1

was staying.  One of the bullets struck Snyder instead, sparing the man he disliked and killing the woman he loved.

Eggers agreed to plead guilty to one count of felony murder.  The state trial judge conducted a guilty-plea hearing under Ohio Criminal Rule 11, during which Eggers admitted that he committed the crime.  After accepting the plea, the trial judge started the sentencing hearing and gave Eggers an opportunity to speak—otherwise known as a right to allocute.  Eggers said the following:  "I'd like to apologize to the family.  You know I loved her.  You know I didn't do this.  I didn't do this.  I love you, mom.  I don't know.  That's it.  I don't know what else to say." R. 8-1 at 86.

Eggers maintains that this half apology/half assertion of innocence made the earlier guilty plea involuntary, suggested that he was actually innocent, and required the state trial court to conduct a hearing under *North Carolina v. Alford*, 400 U.S. 25 (1970), to ascertain the voluntariness of his plea, and to ensure that there was evidence supporting his plea.  The state courts upheld the guilty plea.  And the district court rejected Eggers' federal habeas petition, holding that the state courts did not unreasonably apply clearly established Supreme Court precedent or unreasonably determine the facts in Eggers' case.  We affirm.

I.

After the 2010 murder of Ms. Snyder, the State charged Eggers with an assortment of crimes, including felony murder, felonious assault, and improperly discharging a firearm at or into a home.  *State v. Eggers*, No. 2011-CA-48, 2013 WL 3816675, at *1 (Ohio Ct. App. July 19, 2013).  At what was originally scheduled to be a suppression hearing, the government and Eggers agreed to a plea bargain and told the court as much:  Eggers would plead guilty to one count of felony murder in return for which the government would drop the other charges.  *See id.* at *1; *see also* Ohio Rev. Code § 2903.02(B).  In court, the government provided a brief recitation of the facts supporting the guilty plea:  Eggers fired four shots into a home, and one of them hit—and killed—Snyder.

The court asked Eggers if he wanted to plead guilty "this afternoon."  R. 8-1 at 85. "Yes," he responded.  *Id.*  The court then discussed Eggers' decision with him.  The court asked

if he had gone over the plea document with his lawyer and whether it was his signature that appeared on the plea document.  Eggers answered yes both times.  The court asked whether the government had promised anything besides what was written in the plea agreement or whether anyone had threatened Eggers to get him to plead guilty.  Eggers answered no.  "Are you pleading guilty voluntarily?" the court asked.  *Id.*  "Yes, sir," Eggers responded.  *Id.*

After explaining the nature of his offense and the mandatory nature of his sentence, the court pointed out everything Eggers was giving up.  Eggers was waiving the right to a trial—and with it the right to compel and confront witnesses, the right to testify on his own behalf, and the right to be convicted only by a unanimous jury.  "Understanding that," the court asked how Eggers wanted to plead.  *Id.* at 86.  "Guilty, Your Honor," Eggers replied.  *Id.*  The court "f[ound] him guilty" of felony murder "based upon that plea."  *Id.*

After accepting Eggers' guilty plea, the court stated that it would immediately "proceed with disposition" on the conviction—namely sentencing.  *Id.*  The court then asked if there was "anything [Eggers] wanted to say at this time."  *Id.*  "There is," he replied, "but I don't know if I can speak."  *Id.*  After consulting counsel, Eggers continued, saying:  "I'd like to apologize to the family.  You know I loved her.  You know I didn't do this.  I didn't do this.  I love you, mom.  I don't know.  That's it.  I don't know what else to say."  *Id.*  The court sentenced Eggers to fifteen years to life, a sentence that required little explanation because Ohio law made it mandatory for this crime.

Eleven days later, Eggers filed a handwritten, pro se motion to withdraw his guilty plea, claiming he was innocent.  The trial court denied the motion.

Eggers appealed.  He challenged the voluntariness of his guilty plea, arguing (among other things) that the court should have held an *Alford* hearing either to resolve the apparent conflict between his guilty plea and his claim of innocence at the sentencing hearing or to ensure a legitimate factual predicate for the guilty plea.  *See North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970).  The Ohio Court of Appeals rejected this argument on the merits, 2013 WL 3816675, at *5, and the Ohio Supreme Court refused to review Eggers' appeal, 999 N.E.2d 695 (Ohio 2013) (table).

Eggers turned to the federal courts.  The district court denied relief on all of his § 2254 claims and granted a certificate of appealability limited to this question:  Did the Ohio courts reasonably apply *Alford* in resolving the apparent tension between Eggers' guilty plea and protestation of innocence at sentencing?

## II.

We do not lightly overturn a state court's decision that state proceedings complied with the United States Constitution.  We may do so only if the decision (1) "was based on an unreasonable determination of the facts" or (2) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  As to the factual side, we must be convinced that "the state court's ruling . . . was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see Burt v. Titlow*, 134 S. Ct. 10, 16 (2013).  As to the legal side, the state court decision must be "objectively unreasonable, not merely wrong; even clear error will not suffice."  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quotations omitted).

The Ohio Court of Appeals' opinion, the last decision on the merits and the one we examine, *see Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991), does not violate this forgiving standard.  In a decision by Judge Fain, the state court held that Eggers did not trigger *Alford*'s requirement that a trial court ensure the factual basis of a guilty plea when a defendant protests his innocence at the plea hearing.  Any of Eggers' statements "that could be construed as a protestation of innocence," it explained, "occurred after the guilty plea had been accepted" and at sentencing, where *Alford* does not apply.  2013 WL 3816675, at *5.

That was not an unreasonable reading of the facts or the law.  First the facts.  After the trial court warned Eggers that he was giving up an assortment of rights and ensured that his plea was voluntary, Eggers stated that he pleaded "[g]uilty."  R. 8-1 at 86.  On that basis, the court accepted his guilty plea and "f[ound] [Eggers] guilty."  *Id.*  Once that happened, the court moved to the sentencing phase of the hearing.  The court would "proceed with disposition on [the felony murder count]," it said.  *Id.*  The court in other words transitioned from taking a plea to imposing

a sentence.  Only then did the court ask Eggers if he had anything else to say and only then did Eggers disclaim responsibility for the crime.  On this record, the Ohio Court of Appeals did not unreasonably determine the facts:  that the plea phase of the hearing had ended and the sentencing hearing had started before Eggers mentioned anything suggestive of innocence.  *See Burt*, 134 S. Ct. at 16.

Second the law.  *Alford*'s requirement that there be a "strong factual basis" for a guilty plea, 400 U.S. at 38, "enables a court to determine that the defendant's guilty plea is voluntary" and thus constitutional, *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995).  But the requirement kicks in only if a defendant "protests his innocence" during the plea colloquy.  *Id.* The context in which *Alford* arose confirms the point.  At the plea colloquy, the defendant simultaneously pleaded guilty and asserted his innocence, noting that he pleaded guilty to avoid the risk of a capital charge.  400 U.S. at 28.  That is not this case.  Eggers' protestations of innocence, as the state courts permissibly found, occurred after the guilty-plea hearing had ended.  Absent a claim of innocence during the plea hearing, "there is no constitutional requirement that a trial judge inquire into the factual basis of a plea."  *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975).  Eggers never claimed he was innocent until after he pleaded guilty and after the district court accepted that plea.  Eggers thus never triggered *Alford*.  "[O]nce a court accepts a plea agreement," we have explained in a similar context, "it is bound by the bargain."  *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001) (quotation omitted).  The state court's holding that *Alford* did not apply was thus not "contrary to" or "an unreasonable application of" "clearly established Federal law."  28 U.S.C. § 2254(d)(1).

Eggers, notably, fails to point to a single U.S. Supreme Court holding that applies *Alford* to a protestation of innocence raised for the first time at a sentencing hearing.  "Section 2254(d)(1)," the Supreme Court has explained, "provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error."  *White*, 134 S. Ct. at 1706.  Not only has Eggers failed to identify a Supreme Court decision applying *Alford* to a protestation of innocence made after a guilty plea had been accepted, he has not identified any court decision, state or federal, appellate or trial, that applied *Alford* in this setting.

One other point deserves mention on this score. It is not clear that Eggers' statement amounted to a claim of innocence in the first place. The state court suggested as much, saying only that Eggers' statement "could be construed as a protestation of innocence." 2013 WL 3816675, at *5. The federal magistrate judge pushed the point further, explaining that given "[t]he context of the killing" and the fact that Eggers' "words were spoken in the midst of an apology, they could have been understood as directed to [Ms. Snyder's] family and claiming he did not intend to kill her." *Eggers v. Warden*, No. 3:14-cv-443, 2015 WL 3472960, at *10 (S.D. Ohio June 1, 2015), *report and recommendation adopted*, 2015 WL 4698434 (S.D. Ohio Aug. 6, 2015). In context, the statement reads more like an admission of guilt than a protestation of innocence: Eggers was in the midst of a heartfelt apology to the victim's family, which is quite understandable given his affection for Ms. Snyder but which is the opposite of a claim of innocence. In view of his relationship with the victim, it is just as plausible to read his words as a statement to her family (and his) that he did not intend to kill her, which in fact he did not.

Eggers offers several rejoinders to this conclusion. He protests that his claim of innocence came less than two minutes after the court accepted his plea. This was "one ongoing hearing," he points out, and the trial court "made no announcement that the plea hearing was over . . . that a non-lawyer would understand." Appellant's Br. 14–15. The trial court should have stopped to apply *Alford*, as Eggers sees it, and determined whether there was a strong factual basis for his guilty plea.

To be sure, this is one way to read the facts, but it is not the only way—and most importantly it is not the only reasonable way. In this setting, we ask not whether we would have read the facts differently "in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). We ask whether fairminded jurists could agree with the state court's reading of the facts. *See Burt*, 134 S. Ct. at 16. We see no such problem here, where the trial court accepted the guilty plea and signaled a transition before Eggers mentioned anything about his innocence. Under *Alford*, "it is not incumbent upon the sentencing court to ascertain whether the defendant believes in his innocence. Instead, it is the defendant's duty to assert innocence and thereby bring to the court's attention the need to ensure a factual basis for the guilty plea notwithstanding his claim of innocence." *Orman v. Cain*, 228 F.3d 616, 621 (5th Cir. 2000).

Nor do we see any problem with the state trial judge's use of the word "disposition" to describe the transition from the guilty-plea part of the hearing to the sentencing-phase part of the hearing. The word means "the act . . . of" "arrang[ing] or settl[ing] a matter finally," *Webster's Third New International Dictionary* 654 (2002), a description that fairly signals a shift to sentencing. That indeed is just how the state court of appeals (which was in a better position to know than we are) construed the state trial court's hearing. 2013 WL 3816675, at *5.

Even if the federal courts may not grant relief on this claim, Eggers suggests that his plea should have been unwound on several other grounds: that he pleaded guilty only under pressure from counsel and that counsel negotiated a plea bargain against his wishes. But Eggers never presented these arguments to the Ohio Court of Appeals on direct review, forfeiting them there and here. The statute that gives Eggers a potential right to relief requires a showing that the state court made "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). That means that he (and we) are "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The evidence presented to the state court on direct appeal was the transcript of the plea hearing, *see* 2013 WL 3816675, at *2–5, and on that basis it reasonably determined that Eggers' guilty plea comported with *Alford* and the U.S. Constitution.

Eggers, sure enough, tried to introduce evidence regarding these other claims (mainly in the form of affidavits from family members and friends) in a state post-conviction relief proceeding. *See State v. Eggers*, No. 2012–CA–33, 2013 WL 3971380, at *4–9 (Ohio Ct. App. Aug. 2, 2013). But he did not raise an *Alford* claim in that proceeding, *see id.* at *2–3, *8, and he has not challenged the findings from that proceeding here.

For these reasons, we affirm.