Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 11, 2023

**2023 CO 46**

**No. 21SC765, *Medina v. People*—Criminal Procedure—Plea of Guilty—Constitutional Law—Due Process.**

The defendant pleaded guilty to felony menacing, even though he maintained his innocence of that charge, pursuant to *North Carolina v. Alford*, 400 U.S. 25, 39 (1970). The trial court found that the defendant's plea was voluntary, knowing, and intelligent. But because the defendant agreed to waive proof of a factual basis for the charge under Crim. P. 11(b)(6), the trial court did not make a finding as to whether strong evidence of the defendant's guilt existed.

The supreme court now considers whether an *Alford* plea requires that the trial court make a finding of strong evidence of actual guilt to pass constitutional muster. The court concludes that there is no such requirement. Rather, the supreme court holds that a defendant may enter an *Alford* plea while nonetheless waiving the establishment of a factual basis for the charge under Crim. P. 11(b)(6), provided that the plea is voluntary, knowing, and intelligent. The supreme court therefore affirms the division's judgment, albeit on slightly different grounds.

# The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2023 CO 46

### Supreme Court Case No. 21SC765
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 19CA1196

### Petitioner:

Delano Marco Medina,

v.

### Respondent:

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
September 11, 2023

**Attorneys for Petitioner:**
Schelhaas Law LLC
Krista A. Schelhaas
  *Littleton, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Grant R. Fevurly, Assistant Attorney General
  *Denver, Colorado*



**CHIEF JUSTICE BOATRIGHT** delivered the Opinion of the Court, in which **JUSTICE MÁRQUEZ**, **JUSTICE HOOD**, **JUSTICE GABRIEL**, **JUSTICE HART**, **JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined.

CHIEF JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶1    In *North Carolina v. Alford*, 400 U.S. 25, 39 (1970), the United States Supreme Court upheld a defendant's guilty plea even though the defendant maintained his innocence while entering the plea. In so doing, the Court noted that such a scenario (now commonly known as an *Alford* plea) is functionally identical to a no-contest plea when the defendant "intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.* at 37.

¶2    Similarly, Delano Marco Medina pleaded guilty to felony menacing even though he maintained his innocence of that charge. He did so in exchange for the dismissal of several other criminal cases. The trial court found that Medina's plea was voluntary, knowing, and intelligent. But because Medina agreed to waive the establishment of a factual basis for menacing under Crim. P. 11(b)(6), the trial court did not make a finding as to whether strong evidence of Medina's actual guilt existed. Medina later moved to withdraw his plea as violative of due process, arguing that a defendant cannot waive proof of a factual basis when entering an *Alford* plea. The postconviction court denied his motion, and a division of the court of appeals affirmed.

¶3    We must now determine whether an *Alford* plea requires that the trial court make a finding of strong evidence of actual guilt to pass constitutional muster. We

3

conclude that there is no such requirement. Rather, we hold that a defendant may enter an *Alford* plea while nonetheless waiving the establishment of a factual basis for the charge under Crim. P. 11(b)(6), provided that the plea is voluntary, knowing, and intelligent. We therefore affirm the division's judgment, albeit on slightly different grounds.

## I. Facts and Procedural History

¶4 Medina's wife reported that Medina had threatened her and held a knife to her throat during an argument. The People charged Medina in Lake County with felony menacing (committed with the use of a real or simulated weapon), a class 5 felony. At the time, Medina faced prosecution in five other Lake County cases, as well as one Boulder County case. The court set a $10,000 cash or surety bond in the menacing case; bond amounts were also set in the other cases.

¶5 Medina later agreed to plead guilty to felony menacing in this case. In exchange, the People agreed to dismiss all charges in the five other Lake County cases.[1] The parties further agreed that after Medina received his Boulder County

---

[1] The People agreed to dismiss Lake County cases 13CR53, 13CR63, 13T75, 13M130, and 13M131. While the record doesn't reflect the charges in these cases, we take judicial notice that they included ten felony counts (including class 4 felony identity theft, class 5 felony forgery, and four counts of class 6 felony violation of bond conditions). *See People v. Sa'ra*, 117 P.3d 51, 56 (Colo. App. 2004) ("A court may take judicial notice of the contents of court records in a related proceeding."). The cases also included a habitual criminal sentence enhancer, eleven misdemeanor counts, a misdemeanor traffic offense, and a traffic infraction.

sentence, he would receive a consecutive one-year sentence for menacing. Medina signed a copy of the guilty plea, which stated both: "I acknowledge that there is factual basis for my guilty plea" and "I waive establishment of a factual basis for the charge."

¶6 Before the plea colloquy, Medina's attorney ("plea counsel") told the trial court that Medina "steadfastly maintains that the menacing would not be a provable case." Plea counsel added, however, that Medina "does not have a defense" to "other cases, in particular a bond violation." Accordingly, plea counsel said that Medina was choosing to plead guilty to felony menacing, "even though in his heart of hearts he does not believe he's guilty of that," so Medina could "take advantage of the plea bargain." And "to that extent," plea counsel stated, Medina "would be waiving proof of a factual basis."

¶7 The trial court acknowledged that because Medina maintained his innocence, he was entering an *Alford* plea. The court asked Medina if he had read the plea agreement, understood everything he read, and signed it. Medina said that he had. The court warned Medina that he would be "giving up some serious rights" by pleading guilty, which the court then described in turn before asking if Medina understood that he would be waiving each right. Medina said that he understood. The trial court explained the elements of felony menacing and asked whether Medina understood that if he went to trial, the People would need to

5

prove each element beyond a reasonable doubt. Medina said that he understood. The trial court asked if Medina understood that "[o]nce you plead guilty, this is a final decision. You cannot come back at another time, change your mind, plead not guilty and have a trial." Again, Medina said that he understood. At that point, the trial court asked Medina how he chose to plead, and Medina pleaded guilty.

¶8 Accordingly, the trial court found that Medina's plea was "freely, voluntarily, knowingly and intelligently given." The court also found that Medina had "waived the factual basis" for the menacing charge and understood that he was waiving his rights by pleading guilty. The trial court therefore accepted Medina's guilty plea and scheduled a sentencing hearing. In accordance with the plea agreement, the court then dismissed the five other Lake County cases. With the other cases dismissed, Medina posted the $10,000 surety bond in this case and was released from custody.

¶9 Medina failed to appear at the sentencing hearing, and the court issued a warrant for his arrest. Almost a year later, Medina appeared in custody once again, represented by a new attorney ("sentencing counsel"). The People asked the court to enter the one-year sentence for felony menacing that Medina had agreed to previously. Sentencing counsel, however, sought to withdraw the plea, arguing that Medina had believed he could withdraw an *Alford* plea if he

6

discovered new evidence and that new evidence had since come to light.[2] The trial court denied Medina's request to withdraw his plea, stating that "there's no evidence before me that [Medina's] plea was not freely, voluntarily, knowingly and intelligently done." And so, the court imposed the one-year sentence that Medina had stipulated to previously, and Medina was given 165 days of presentence confinement credit for a total sentence of 200 days of imprisonment, plus two years of mandatory parole.

¶10 Almost three years later, Medina filed a motion for postconviction relief. As relevant here, Medina argued that there was no factual basis for the plea, rendering his conviction invalid under *Alford*. At a hearing, plea counsel testified that Medina had "waived the factual basis" for menacing because (1) "he may have been guilty of some of the other charges" and "wanted to take the plea agreement," and (2) he would be able to post bond once the other Lake County cases were dismissed. Medina also testified and acknowledged that he "was guilty of" the other Lake County cases, but he maintained that he was innocent of menacing. Under cross-examination, Medina conceded that pleading guilty to menacing "was my choice" and that "[n]obody forced me."

---

[2] Sentencing counsel made an offer of proof that in a jail call with Medina, the victim stated that she had not seen Medina holding a knife during their argument. Medina testified at the postconviction hearing, however, that the call itself took place *before* he pleaded guilty.

7

¶11    The postconviction court denied Medina's motion.  It found that the record "reflect[ed] that [Medina] waived a factual basis for the purpose of availing himself of the plea bargain in the case"; specifically, Medina did so because he wanted to avoid prosecution in the other Lake County cases and post bond.  The court found it "[p]articularly persuasive" that Medina had pleaded guilty knowing he would obtain the benefits of an "incredibly favorable" plea bargain, including the dismissal of five other cases and a stipulated one-year sentence.  Moreover, the court found that the record provided sufficient grounds "to determine that there was a strong factual basis for the offense."  Accordingly, the court ruled that Medina's plea was knowing and voluntary; it also ruled that "[t]here was a factual basis for the plea sufficient to meet the *Alford* requirements."

¶12    Medina appealed, arguing that under *Alford*, his plea was invalid because the trial court allowed him to waive proof of a factual basis.[3] *People v. Medina*, 2021 COA 124, ¶ 14, 501 P.3d 834, 837.  A division of the court of appeals first noted that Crim. P. 11(b)(6) expressly permits a defendant to waive proof of a factual basis when the defendant enters a plea agreement.  *Id.* at ¶ 18, 501 P.3d at 838.  Turning to *Alford*, the division identified "two components to a plea when a

_____

[3] Medina also argued that the postconviction court erred by independently assessing whether there was a factual basis for the plea and by concluding that there was.  *People v. Medina*, 2021 COA 124, ¶ 14, 501 P.3d 834, 837.  The division didn't reach those arguments, *id.*, and they aren't before us now.

8

defendant protests his or her innocence: (1) that the defendant's interests show he or she should enter the plea; and (2) that there is strong evidence of actual guilt" despite that protestation of innocence. *Id.* at ¶ 23, 501 P.3d at 839. The division determined, however, that *Alford* didn't resolve whether the defendant may waive a finding that there is strong evidence of actual guilt. *Id.* at ¶ 24, 501 P.3d at 839. Reviewing case law, the division determined that federal courts disagree as to whether a strong factual basis is an independent constitutional requirement for *Alford* pleas. *Id.* at ¶ 29, 501 P.3d at 839–40. The division found similar discord among state courts; some hold that a strong factual basis is constitutionally required under *Alford*, while others hold that a strong factual basis is required by state procedural rules. *Id.* at ¶¶ 34–36, 501 P.3d at 840–41.

¶13     Faced with these competing views, the division stated that Colorado "has treated an *Alford* plea like any other guilty plea" and that Crim. P. 11(b)(6) — which does not distinguish between *Alford* pleas and other guilty pleas — is consistent with that treatment. *Id.* at ¶ 41, 501 P.3d at 841. Accordingly, the division held that although "the strong factual basis from *Alford* is required as part of constitutional due process," it is not an *independent* right from the broader constitutional imperative that a defendant must "knowingly, voluntarily, and intelligently enter[] a plea agreement." *Id.* at ¶ 48, 501 P.3d at 843. And because Crim. P. 11 allows defendants to waive the factual-basis finding, the division

9

concluded that such a waiver—if validly made—doesn't "render[] an *Alford* plea involuntary as a matter of law." *Id.* Applying those principles, the division determined that the postconviction court did not err by ruling that Medina waived a factual-basis finding and voluntarily, knowingly, and intelligently pleaded guilty. *Id.* at ¶ 65, 501 P.3d at 846.

¶14 Medina petitioned for certiorari review, and we granted his petition.[4]

## II. Standard of Review

¶15 "The constitutional validity of a guilty plea is a question of law that we review de novo." *Brooks v. People*, 2019 CO 75M, ¶ 6, 448 P.3d 310, 312. We defer to the trial court's factual findings, however, if they are supported by the record. *Id.* Likewise, in Crim. P. 35(c) proceedings, "we review the lower court's legal conclusions de novo but defer to the postconviction court's factual findings if they are supported by the record." *People v. Corson*, 2016 CO 33, ¶ 25, 379 P.3d 288, 293.

## III. Analysis

¶16 We begin by discussing the general requirements for a valid guilty plea. We then turn to *Alford*, which upheld the validity of guilty pleas accompanied by a protestation of innocence when the defendant "intelligently concludes that his

---

[4] We granted certiorari to review the following issue:

> Whether a guilty plea entered pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), but without strong evidence of guilt, violates due process.

10

interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." 400 U.S. at 37. After surveying decisions that have interpreted this language, we determine that a factual-basis finding is not a constitutional prerequisite for an *Alford* plea, but rather a procedural tool that courts may use to evaluate whether the plea is voluntary, knowing, and intelligent (and therefore comports with due process). Thus, we hold that a defendant may enter an *Alford* plea while nonetheless waiving the establishment of a factual basis for the charge under Crim. P. 11(b)(6), provided that the plea is voluntary, knowing, and intelligent. Applying these principles, we affirm, albeit on slightly different grounds.

## A. Guilty Pleas

¶17 Because a guilty plea involves a defendant's waiver of important constitutional rights, it "is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A plea is invalid if "a defendant 'does not understand the nature of the constitutional protections he is waiving,' or 'has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.'" *People v. Dist. Ct.*, 868 P.2d 400, 403 (Colo. 1994) (citation omitted) (quoting *Lacy v. People*, 775 P.2d 1, 4 (Colo. 1989)).

11

¶18 However, "[n]o formalistic litany is required before a court may accept a plea of guilty." *Id.* "Nor does due process generally require that the record demonstrate an adequate factual basis for the plea." *Lacy*, 775 P.2d at 5. Instead, the record "must simply show that the defendant entered his guilty plea voluntarily and understandingly." *Id.*

¶19 Alongside these constitutional requirements, we have adopted rules governing the procedures by which a defendant may plead guilty. Crim. P. 11(b). Compliance with Crim. P. 11 "normally will satisfy constitutional due process concerns." *Dist. Ct.*, 868 P.2d at 404. When a defendant pleads guilty, the court "shall not accept" the plea "without first determining that the defendant has been advised of all the rights set forth in Rule 5(a)(2)"; namely, the privilege against self-incrimination, the right to counsel, the right to request appointed counsel, the right to bail, the right to a jury trial, and (under certain circumstances) the right to demand a preliminary hearing. Crim. P. 11(b); *see also* Crim. P. 5(a)(2). Typically, the court must also determine "[t]hat there is a factual basis for the plea." Crim. P. 11(b)(6). However, the rule provides that a defendant may "waive the establishment of a factual basis for the particular charge to which he pleads" if the plea is entered as the result of a plea agreement and the court confirms that the defendant understands the basis for the agreement. *Id.*

12

¶20    With these standards in mind, we turn to the type of guilty plea at issue here: a plea accompanied by a protestation of innocence, also called an *Alford* plea.

## B. *Alford* Pleas

¶21    In *Alford*, the United States Supreme Court confronted whether the Constitution permits a defendant to plead guilty even when the defendant maintains factual innocence. 400 U.S. at 34. The Court answered yes. *Id.* at 37.

¶22    Alford was charged with first degree murder. *Id.* at 26. At the time, North Carolina law provided that first degree murder must be punished with the death penalty unless the jury recommended life imprisonment. *Id.* at 27 n.1. And while Alford insisted that he was innocent, several witnesses incriminated him. *Id.* at 27. So, Alford decided to plead guilty to second degree murder, which was *not* a death-penalty-eligible crime. *Id.* at 27–28 & n.1. Before accepting his plea, the trial court heard testimony suggesting that Alford had committed the murder. *Id.* at 28. Alford also testified, saying that while he maintained his innocence, he wished to plead guilty to avoid the death penalty. *Id.* The court accepted Alford's plea and sentenced him to prison. *Id.* at 29.

¶23    Alford later challenged his conviction, arguing (in part) that his plea was invalid because he maintained his innocence. *See id.* at 31. The Supreme Court stated that the standard for assessing a guilty plea's validity "was and remains whether the plea represents a voluntary and intelligent choice among the

13

alternative courses of action open to the defendant." *Id.* The Court acknowledged that ordinarily, a conviction on a guilty plea "is justified by the defendant's admission that he committed the crime charged against him and his consent that judgment be entered without a trial of any kind." *Id.* at 32.

¶24 Nevertheless, the Court recognized that a defendant who maintains innocence "might reasonably conclude a jury would be convinced of his guilt and that he would fare better in the sentence by pleading guilty." *Id.* at 33 (quoting *McCoy v. United States*, 363 F.2d 306, 308 (D.C. Cir. 1966)). Accordingly, "[r]easons other than the fact that he is guilty may induce a defendant to so plead, . . . [and] [h]e must be permitted to judge for himself in this respect." *Id.* (alterations in original) (quoting *State v. Kaufman*, 2 N.W. 275, 276 (Iowa 1879)).

¶25 The Court noted that it had already allowed lower courts to impose a prison sentence upon a plea of nolo contendere—even though a defendant doesn't expressly admit guilt in such a plea.[5] *Id.* at 35–36 (citing *Hudson v. United States*, 272 U.S. 451, 457 (1926)). "Implicit" in that logic, the Court determined, "is a recognition that the Constitution does not bar imposition of a prison sentence

---

[5] A nolo contendere plea, also called a no-contest plea, "literally means 'I do not wish to contend.'" *People v. Darlington*, 105 P.3d 230, 233 (Colo. 2005) (quoting *Nolo Contendere*, Black's Law Dictionary (8th ed. 2004)). As the name implies, a plea of nolo contendere permits a defendant to simply not contest guilt or innocence; still, it is "fully equivalent" to a guilty plea for purposes of the criminal case. *Id.*

upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence." *Id.* at 36. So "while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty." *Id.* at 37.

¶26 Returning to Alford's case, the Court stated that it couldn't "perceive any material difference" between a nolo contendere plea and a plea accompanied by a protestation of innocence "when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea *and the record before the judge contains strong evidence of actual guilt*." *Id.* (emphasis added). In so doing, the Court noted that some courts "properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea." *Id.* at 38 n.10 (collecting cases). But the Court reasoned that the validity of Alford's plea was clear when "viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered." *Id.* at 37–38. Thus, the Court concluded that Alford's choice to plead guilty while maintaining his innocence was constitutionally permissible. *Id.* at 38–39.

¶27 Colorado permits defendants to make the same choice. *See People v. Birdsong*, 958 P.2d 1124, 1127 (Colo. 1998). At bottom, though, "[a]n *Alford* plea is

15

a guilty plea." *Id.*; *see also United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) ("An *Alford*-type guilty plea is a guilty plea in all material respects."). So, in other contexts, we have declined to differentiate an *Alford* plea from any other guilty plea. *People v. Schneider*, 25 P.3d 755, 758 (Colo. 2001) (holding that "an *Alford* plea is no different from a guilty plea" when analyzing whether a defendant may withdraw the plea); *Birdsong*, 958 P.2d at 1127 (holding that the trial court's "obligations to advise the defendant were no greater" for an *Alford* plea "than with any other guilty plea"). Nor do our procedural rules differentiate an *Alford* plea from any other guilty plea. *See* Crim. P. 11(a) (providing that a defendant may plead guilty, not guilty, not guilty by reason of insanity, or nolo contendere).

¶28　Left unresolved in our decisions, however, is whether an *Alford* plea must be supported by a finding that there is strong evidence of actual guilt, or whether a defendant may instead waive that finding. *See Lacy*, 775 P.2d at 5 & n.7 (holding that due process generally does not require that the record demonstrate an adequate factual basis for a plea but declining to address whether the same is true for *Alford* pleas); *In re Cardwell*, 50 P.3d 897, 905 n.8 (Colo. 2002) (suggesting in dicta that "the trial judge should inquire into factual guilt" when a defendant protests innocence). We turn to that issue now.

## C. Strong Evidence of Actual Guilt

¶29    Medina argues that the "strong evidence of actual guilt" discussed in *Alford* is a nonwaivable, constitutional prerequisite for all *Alford* pleas, meaning that an *Alford* plea violates due process unless it is supported by a factual-basis finding. In response, the People argue that the requirement for courts to make a factual-basis finding is a product of procedural rules, not the Constitution, and that Colorado's Crim. P. 11 allows defendants to waive that finding. Alternatively, the People argue that even if a factual-basis finding is a constitutional requirement for *Alford* pleas, defendants can waive that requirement, just as they waive numerous constitutional rights by pleading guilty.

¶30    Other appellate courts are split on this issue. *Compare Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) (holding that strong evidence of guilt is not a constitutional prerequisite for an *Alford* plea), *with Willett v. Georgia*, 608 F.2d 538, 540 (5th Cir. 1979) (holding that a factual basis must support an *Alford* plea).

¶31    Specifically, the Seventh Circuit holds that strong evidence of actual guilt is not constitutionally required, even in the context of an *Alford* plea. *Higgason*, 984 F.2d at 208. Instead, the standard for assessing whether an *Alford* plea is constitutional remains the same as with any other guilty plea: The plea must be voluntary, knowing, and intelligent. *Id.* (quoting *Alford*, 400 U.S. at 31). According to the Seventh Circuit, "[p]utting a factual basis for the plea on the record has

17

become familiar as a result of statutes and rules, not as a result of constitutional compulsion." *Id.* The *Higgason* court recognized that Fed. R. Crim. P. 11 requires federal courts to make a factual-basis finding before accepting any guilty plea. *Id.* But *Alford* "does not imply that the factual-basis requirement of Fed. R. Crim. P. [11] and its state law counterparts comes from the Constitution." *Id.* at 207. Rather, "*Alford* tells us that strong evidence on the record can show that a plea is voluntary; it does not hold that *only* strong evidence on the record permits a finding of voluntariness." *Id.*

¶32 The Sixth Circuit has similarly concluded that the factual-basis requirement "is not a requirement of the Constitution, but rather a requirement created by rules and statutes." *Tunning*, 69 F.3d at 111. According to that Circuit, *Alford* held that a court may accept a guilty plea accompanied by a protestation of innocence "so long as the defendant voluntarily, knowingly, and understandingly consents to be sentenced on a charge." *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975). And "[t]his being the rule, there is no constitutional requirement that a trial judge inquire into the factual basis of a plea." *Id.* That requirement instead stems from Fed. R. Crim. P. 11, the "precise terms" of which "are not constitutionally applicable to the state courts." *Id.* at 1383, 1385; *see also* Fed. R. Crim. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.").

18

¶33 In contrast, the Fifth Circuit has held that courts are constitutionally obligated to inquire into the factual basis of an *Alford* plea before accepting one. *Willett*, 608 F.2d at 540. In so doing, the Fifth Circuit focused on a footnote in *Alford*, which said that various courts "properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea." *Id.* (quoting *Alford*, 400 U.S. at 38 n.10). Extrapolating from that language, the Fifth Circuit held that "a judicial finding of some factual basis for [the] defendant's guilt is an essential part of the constitutionally-required finding of a voluntary and intelligent decision to plead guilty" in the context of an *Alford* plea. *Id.* Other federal circuits have similarly concluded that evidence of guilt must support an *Alford* plea. *See United States ex rel. Dunn v. Casscles*, 494 F.2d 397, 399 (2d Cir. 1974); *United States v. Mackins*, 218 F.3d 263, 268 (3d Cir. 2000); *United States v. Mastrapa*, 509 F.3d 652, 659 (4th Cir. 2007); *White Hawk v. Solem*, 693 F.2d 825, 829 (8th Cir. 1982); *United States v. Vidal*, 561 F.3d 1113, 1119 (10th Cir. 2009); *United States v. Lefever*, 343 F. App'x 595, 597 (11th Cir. 2009). Even these courts, however, disagree as to whether "strong" evidence is necessary, as opposed to less stringent proof. *Compare White Hawk*, 693 F.2d at 829 (requiring a "strong factual basis"), *with United States v. Morrow*, 914 F.2d 608, 612 (4th Cir. 1990) ("[A]ny Rule 11 proceeding requires that a factual basis for the plea be established and we are unwilling to place more requirements in the context of an *Alford* plea.").

19

¶34 State courts are similarly split. Some have held that a factual-basis finding is constitutionally required for *Alford* pleas. *See, e.g.*, *Sparrow v. State*, 625 P.2d 414, 415–16 (Idaho 1981); *State v. Smith*, 606 P.2d 86, 88–89 (Haw. 1980); *State v. Goulette*, 258 N.W.2d 758, 761 (Minn. 1977). But others treat the issue as a matter of state procedural law, not a federal constitutional requirement. *See, e.g.*, *People v. Barker*, 415 N.E.2d 404, 410 (Ill. 1980) (relying on state procedural rule modeled after Fed. R. Crim. P. 11); *Robinson v. State*, 291 A.2d 279, 280–81 (Del. 1972) (same).

¶35 Among these competing views, we find the Seventh Circuit's approach most persuasive. Although a finding of strong evidence of actual guilt *can* show that an *Alford* plea comports with due process, it is not a constitutional prerequisite for every such plea. *Higgason*, 984 F.2d at 208. Instead, "[t]he Constitution's standard 'was and remains whether the plea represents a voluntary and intelligent choice.'" *Id.* (quoting *Alford*, 400 U.S. at 31).

¶36 While the Supreme Court noted that evidence of Alford's guilt "provided a means by which the judge could test whether the plea was being intelligently entered," *Alford*, 400 U.S. at 38, the Court didn't state that strong evidence of guilt *alone* can provide those means, *Higgason*, 984 F.2d at 207 ("'If A then B' does not imply 'if not-A then not-B.'"). To the contrary, inquiring into factual guilt is simply one way that courts may assess whether an *Alford* plea is voluntary, knowing, and intelligent—not the only way.

20

¶37    Crim. P. 11 is designed to facilitate the constitutionally required determination that a guilty plea is voluntary, knowing, and intelligent. *People v. Leonard*, 673 P.2d 37, 39–40 (Colo. 1983). But that doesn't mean the factual-basis finding discussed in Crim. P. 11 is *itself* a constitutional requirement; instead, the finding is procedural in nature.[6] *See Higgason*, 984 F.2d at 207; *Roddy*, 516 F.2d at 1385 ("The requirement that a federal trial judge inquire into the factual basis of a plea stems from [Fed. R. Crim. P. 11], rather than from the Constitution."). Some jurisdictions' procedural rules, like the federal rules, require courts to make a factual-basis finding before accepting any guilty plea. *See, e.g.*, Fed. R. Crim. P. 11(b)(3); Cal. Penal Code § 1192.5(c) (West 2023) ("The court shall also cause an inquiry to be made of the defendant to satisfy itself . . . that there is a factual basis for the plea."). But our Crim. P. 11(b)(6) expressly allows defendants to waive proof of a factual basis if their plea is entered as the result of a plea agreement. Accordingly, under the plain language of Crim. P. 11(b)(6), defendants like Medina may waive proof of a factual basis, even if they simultaneously profess

---

[6] To the extent the division below concluded that a strong factual basis "is required as part of constitutional due process," *Medina*, ¶ 48, 501 P.3d at 843, we disapprove of that portion of its opinion. While a factual-basis finding may help a trial court determine that a defendant's plea comports with due process, that finding is not an integral component of due process itself. *Higgason*, 984 F.2d at 207.

21

their innocence.[7] *See People v. Fuqua*, 764 P.2d 56, 59 (Colo. 1988) ("[I]f [a criminal procedure rule] is plain and unambiguous, we apply the rule as written.").

¶38 This treatment comports with our previous recognition that "[a]n *Alford* plea is a guilty plea." *Birdsong*, 958 P.2d at 1127. We have long recognized that "an *Alford* plea is the functional equivalent of a guilty plea" and have declined to impose different standards when assessing either. *Schneider*, 25 P.3d at 759; *see also Birdsong*, 958 P.2d at 1127. And while we have (until today) reserved ruling on whether a factual-basis finding must support an *Alford* plea, we have nonetheless held that due process does not "generally require that the record demonstrate an adequate factual basis" for guilty pleas. *Lacy*, 775 P.2d at 5. Because we have declined to differentiate between *Alford* pleas and other guilty pleas generally, we decline to do so in this context as well.

¶39 Moreover, the determination that a guilty plea is voluntary, knowing, and intelligent necessarily depends on the circumstances of each case. *See id.* at 6. While a defendant's choice to plead guilty may be influenced by the factual basis for the charge, it may equally be influenced by other considerations. For instance,

---

[7] In some cases, it may be better practice for trial courts to nonetheless make a factual-basis finding before accepting an *Alford* plea. A thorough inquiry into the factual basis for a plea can provide insight into whether the defendant's decision to plead guilty is indeed voluntary, knowing, and intelligent; it may also insulate the conviction from later attack by providing record support that the plea represents a voluntary and intelligent choice. *Higgason*, 984 F.2d at 207–08.

by pleading guilty to menacing, Medina was able to achieve the global disposition of several *other* criminal cases for which he had no defense. *Cf. People v. Isaacks*, 133 P.3d 1190, 1191 (Colo. 2006) (discussing a defendant who was charged with menacing but instead pleaded guilty to a conspiracy charge that "was not supported by facts" so he could take advantage of a plea bargain); *People v. Maestas*, 224 P.3d 405, 408–09 (Colo. App. 2009) (discussing a defendant who pleaded guilty to a charge of second degree assault as part of a plea agreement, even though it was "undisputed that there was no factual basis" for the charge). Like Alford, Medina "now argues in effect that the State should not have allowed him this choice." *Alford*, 400 U.S. at 38–39. But that's not what the Constitution demands. So long as the defendant's choice to plead guilty is voluntary, knowing, and intelligent, the Constitution's mandate is met. *Higgason*, 984 F.2d at 208 (quoting *Alford*, 400 U.S. at 31).

¶40 Thus, we hold that a defendant may enter an *Alford* plea while nonetheless waiving the establishment of a factual basis for the charge under Crim. P. 11(b)(6), provided that the plea is voluntary, knowing, and intelligent.

## D. Application

¶41 We now turn to Medina's plea. Medina faced prosecution in several other cases when he was charged with menacing. So, Medina had a choice to make. He could plead guilty to menacing in exchange for the global disposition of his other

23

cases (including the dismissal of numerous felony charges) and receive a stipulated sentence of one year in the Department of Corrections. Or he could proceed to trial in *all* of his cases, despite his acknowledgment that he "was guilty of" some of those charges, and perhaps try to negotiate piecemeal plea agreements along the way.

¶42 Medina chose the former option. He signed a plea that waived proof of a factual basis for the menacing charge, and his counsel told the trial court that Medina was doing so to take advantage of his plea agreement. The trial court explained the consequences of the guilty plea to Medina, stopping several times to ensure that Medina understood. Each time, Medina said that he did. In Medina's words, "it was my choice" to plead guilty, and "[n]obody forced me." On that record, the postconviction court ruled that Medina waived proof of a factual basis and voluntarily, knowingly, and intelligently pleaded guilty to take advantage of his "incredibly favorable" plea bargain.

¶43 In this appeal, Medina's sole argument is that the trial court was constitutionally required to find that there was strong evidence of actual guilt, even though Medina waived proof of a factual basis. As we have discussed, there is no such requirement. Thus, the postconviction court did not err.

## IV. Conclusion

¶44      For the foregoing reasons, we affirm the division's judgment, albeit on slightly different grounds.