23CA1378 Estate of Jays 07-18-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1378 Archuleta County District Court No. 22PR18 Honorable Justin Patrick Fay, Judge In the Matter of the Estate of Michael Scott Jays, deceased. Steffan Lee Jays, Appellee, v. Elizabeth Bishop, Appellant. ORDERS AFFIRMED Division VII Opinion by JUDGE TAUBMAN* Tow and Kuhn, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 18, 2024 No Appearance for Appellee Evans Legal Group, P.C., John M. Evans, Parker, Colorado, for Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
 1 ¶ 1 Elizabeth Bishop appeals the order of the district court magistrate declining to recuse himself from the case and the court’s ruling that Bishop was not common law married to the decedent. We affirm. I. Background ¶ 2 Bishop and the decedent were in a relationship for twenty-one years. They cohabitated in the decedent’s house in Pagosa Springs during his lifetime, and Bishop continued to reside there after his death. ¶ 3 The decedent died intestate on July 21, 2022. In August, the decedent’s son and only child, Steffan Lee Jays, requested and received informal appointment as personal representative of the estate. A. The Eviction Case ¶ 4 Several months after his informal appointment, Jays filed a complaint in forcible entry and detainer (the FED case) against Bishop to evict her from the home in which she and decedent had lived. Bishop defended on the grounds that she was the decedent’s 
 2 common law wife and was thus entitled to live there.
1 Judge Justin Fay presided over the FED case in his capacity as a part-time county court judge and presided over the probate case that is the subject of this appeal in his capacity as a part-time district court magistrate. ¶ 5 On November 28, 2022, Judge Fay held a hearing and determined that Bishop was not common law married to the decedent. Judge Fay found that, in addition to being listed as “divorced” on his death certificate, the decedent held bank accounts in only his own name, filed his 2006 tax returns as a single person and indicated his marital status as “other,” owned the Pagosa Springs house individually, and indicated his relationship status as “other” on medical documents. “The only evidence of common law marriage other than cohabitation,” Judge Fay explained, “is . . . a minute order in a case involving separate issues that referenced [the decedent] and . . . Bishop as husband and wife.” Because 1 We take judicial notice of the filings in the related case, Archuleta County Case No. 22C116. See Medina v. People, 2023 CO 46, ¶ 5 n.1, 535 P.3d 82, 84 n.1 (“A court may take judicial notice of the contents of court records in a related proceeding.” (quoting People v. Sa’ra, 117 P.3d 51, 56 (Colo. App. 2004))). 
 3 Bishop had failed to establish that she and the decedent were common law married, Judge Fay entered a judgment of possession in favor of Jays. B. This Case ¶ 6 About a week later, Bishop filed a petition for adjudication of intestacy and formal appointment of personal representative, contesting Jays’ prior informal appointment as personal representative and claiming to be the decedent’s common law spouse. At the same time, she moved for a restraining order to stay the eviction in the FED case pending adjudication of her petition. The court granted the restraining order. ¶ 7 On April 3, 2023, Jays moved to dismiss based on issue preclusion. He contended that whether Bishop and the decedent were common law married had been decided in the FED case. In response, Bishop argued that issue preclusion did not apply because the county court in the FED case lacked jurisdiction to decide the issue of common law marriage. She also argued that the cases did not involve the same parties because she was not a party to the probate proceeding. The record indicates that the court denied the motion to dismiss in a later oral ruling. 
 4 ¶ 8 In early June, the court ordered disclosure of “limited” records, “as relevant to the issue of the existence of a common law marriage” between Bishop and the decedent, from a prior dependency and neglect case filed against Bishop’s daughter. Bishop and the decedent had sought to intervene in that case and obtain custody of Bishop’s grandchildren. The court specifically ordered disclosure of the motion to intervene and responses but “order[ed] the parties not to disclose such records except as necessary to litigate the [common law marriage] issue in this case.” The disclosed records contained the Archuleta County Department of Human Services’ response to intervention, which stated “[i]t is unknown whether [the decedent] is married to Elizabeth Bishop,” as well as a 2019 arrest affidavit in which the decedent reported a domestic violence incident allegedly committed by “his wife Elizabeth Bishop” (the domestic violence case). ¶ 9 In a separate disclosure order issued the same day as the first one, the court gave the parties the option of “fil[ing] any authority in support of the disclosure of suppressed records, specifically the Pre-
Sentence [Investigation] Report in [the domestic violence case], within 7 days” or, “[i]n the alternative,” permitting Bishop, “within 
 5 her discretion, . . . [to] execute a release of information.” Bishop chose to execute the release of information, which revealed that her marital status had been listed as “divorced” in the domestic violence case. ¶ 10 At or around the same time that information was released, Bishop filed a motion seeking Judge Fay’s recusal. “Given the nature of the issues at hand,” Bishop stated, “it is vital that every decision made by the court is established upon an unbiased and neutral foundation.” She argued that Judge Fay’s recusal was “necessary” “[i]n order to maintain the confidence of all parties involved,” “promote a fair and just hearing,” and “prevent any perception of potential bias that might arise.” ¶ 11 After a hearing, Bishop moved for post-trial relief, alleging that Judge Fay was biased against her and had incorrectly found no common law marriage had existed between her and the decedent. She contended that Judge Fay had presided over the domestic violence case and, therefore, knew that Bishop had “mistakenly” been listed as “divorced” in that case. She also alleged that Judge Fay had advised Jays’ attorney to move for dismissal based on issue preclusion at the February 7, 2023 setting conference. 
 6 ¶ 12 Jays responded that the admission of records from the domestic violence case was “merely a question of judicial notice” and that Judge Fay “did not advise” him to file a motion to dismiss based on issue preclusion but, rather, “asked if one would be filed.” Further, he noted that “Judge Fay denied the motion for issue preclusion. Clearly a biased and prejudiced official would have taken that opportunity to close out the case.” The court denied Bishop’s post-trial motion, “find[ing] that the claims of an unfair trial, newly discovered evidence, and required recusal are without merit.” ¶ 13 The same day, the court also entered a written order denying Bishop’s common law marriage claim. The court explained that it had received testimony and other evidence and “found for the reasons stated on the record that Elizabeth Bishop failed to establish that she and [the decedent] intended to enter a marital relationship, sharing a life together as spouses in a committed, intimate relationship of mutual support and mutual obligation.” ¶ 14 On appeal, Bishop argues that Judge Fay erred by declining to recuse himself and by concluding that she had failed to establish 
 7 the existence of a common law marriage. We address each contention in turn. II. Recusal ¶ 15 Bishop contends that Judge Fay should have recused himself because he (1) previously presided over the domestic violence case involving Bishop and the decedent; (2) reviewed the post-sentencing release information in the domestic violence case and, therefore, knew it listed Bishop as divorced; and (3) advised Jays’ attorney to raise issue preclusion, which he did. According to Bishop, these actions reveal bias and constitute grounds for recusal. We disagree. ¶ 16 In a civil case, we review a judge’s decision not to recuse for abuse of discretion and review the sufficiency of a recusal motion de novo. See Bocian v. Owners Ins. Co., 2020 COA 98, ¶ 12, 482 P.3d 502, 508; In re Marriage of Mann, 655 P.2d 814, 818 (Colo. 1982). A judge abuses the judge’s discretion if the judge declines to recuse in the face of a legally sufficient recusal motion. Bocian, ¶ 12, 482 P.3d at 509. ¶ 17 Recusal is appropriate when the motion and supporting affidavits allege sufficient facts from which it may reasonably be 
 8 inferred that the judge is or appears to be prejudiced or biased against a party or attorney in the case. Id. at ¶ 13, 482 P.3d at 509; see also C.R.C.P. 97. “Actual bias” exists if a judge has bias or prejudice that will, in all probability, prevent the judge from dealing fairly with a party. Bocian, ¶ 14, 482 P.3d at 509. Even if there is no actual bias, a judge must grant a recusal motion if the judge’s involvement with a case might create the appearance of impropriety. Id. ¶ 18 Importantly, Bishop failed to include the relevant transcripts in the record, even though it was her duty, as the appellant, to do so or provide a statement of the evidence under C.A.R. 10(e). See Till v. People, 196 Colo. 126, 127, 581 P.2d 299, 299 (1978) (“It is the appellant’s duty to designate those portions of the record he deems necessary for an appeal, and to see that the record is transmitted.”); C.A.R. 10(d)(3) (“The appellant must include in the record transcripts of all proceedings necessary for considering and deciding the issues on appeal.”); Wolven v. Velez, 2024 COA 8, ¶ 53 n.6, 547 P.3d 423, 433 n.6 (the party asserting an error has an obligation to present a record that discloses the asserted error). The recusal motion was apparently heard at the hearing on June 
 9 30, 2023, but that transcript is not included in the record. Nor is the transcript of the setting conference where, according to Bishop, Judge Fay “coached” Jays’ attorney to raise issue preclusion. “Absent an adequate record, we presume the trial court’s findings and conclusions are correct.” People v. Clendenin, 232 P.3d 210, 216 (Colo. App. 2009); see also Till, 196 Colo. at 127, 581 P.2d at 299; accord Hock v. N.Y. Life Ins. Co., 876 P.2d 1242, 1252 (Colo. 1994). Therefore, we presume that Judge Fay correctly declined to recuse himself. ¶ 19 Additionally, Bishop’s recusal motion was legally insufficient because it failed to include a supporting affidavit or allege any facts in support of recusal. See C.R.C.P. 97 (recusal motion “shall be supported by affidavit”); Bocian, ¶ 15, 482 P.3d at 509 (recusal motion is insufficient if it “merely allege[s] opinions or conclusions, unsubstantiated by facts supporting a reasonable inference of actual or apparent bias or prejudice”). Although her post-trial motion alleged facts in support of recusal, it too failed to include a supporting affidavit and thus failed to cure the Rule 97 defect. 
 10 ¶ 20 Therefore, given the absence of relevant transcripts and the legal insufficiency of Bishop’s recusal motion, we affirm Judge Fay’s decision not to recuse himself from this case. III. Common Law Marriage ¶ 21 Additionally, Bishop contends that the trial court erred by concluding that she and the decedent were not common law married. According to Bishop, the court did not apply the correct standard in accordance with Hogsett v. Neale, 2021 CO 1, 478 P.3d 713, In re Estate of Yudkin, 2021 CO 2, 478 P.3d 732, and LaFleur v. Pyfer, 2021 CO 3, 479 P.3d 869. ¶ 22 We review a court’s common law marriage determination for an abuse of discretion and its factual findings underlying that determination for clear error. See LaFleur, ¶ 50, 479 P.3d at 883; Estate of Yudkin, ¶ 16, 478 P.3d at 736. ¶ 23 As with the transcripts relevant to the recusal issue, Bishop failed to include the transcript of the court’s common law marriage hearing and ruling or provide a statement of the evidence, even though she had a duty to do so. See Till, 196 Colo. at 127, 581 P.2d at 299; C.A.R. 10(d)(3). Accordingly, we presume that the court correctly concluded that Bishop and the decedent were not 
 11 common law married. See Clendenin, 232 P.3d at 216; see also Till, 196 Colo. at 127, 581 P.2d at 299; accord Hock, 876 P.2d at 1252. ¶ 24 However, the record includes a short written order summarizing the court’s oral ruling, which reveals that the court applied the correct legal standards in accordance with Hogsett, Estate of Yudkin, and LaFleur. ¶ 25 Those cases instruct courts to “give weight to evidence reflecting a couple’s express agreement to marry” and, “[i]n the absence of such evidence,” infer the parties’ agreement from their conduct. Hogsett, ¶ 49, 478 P.3d at 724; see Estate of Yudkin, ¶ 21, 478 P.3d at 737 (same); LaFleur, ¶ 52, 479 P.3d at 883 (same). Following that instruction and citing Hogsett, the court here “found that the evidence failed to establish the couple’s express agreement to marry, or an implied agreement to marry as inferred from their conduct.” ¶ 26 Those cases further counsel that the existence of a common law marriage “depends on the totality of the circumstances, and no single factor is dispositive.” Hogsett, ¶ 4, 478 P.3d at 715; see Estate of Yudkin, ¶ 19, 478 P.3d at 736 (same); see also LaFleur, ¶ 59, 479 P.3d at 885 (finding a common law marriage based on 
 12 “the record as a whole and . . . the totality of the circumstances”). Adhering to that standard and citing Estate of Yudkin, the trial court explained that it “did not rely on any one factor, but considered a totality of the circumstances in finding that a common law marriage did not exist.” ¶ 27 Finally, under those three cases, the “key question” in determining the existence of a common law marriage “is whether the parties mutually intended to enter a marital relationship — that is, to share a life together as spouses in a committed, intimate relationship of mutual support and mutual obligation.” Hogsett, ¶ 49, 478 P.3d at 724; see Estate of Yudkin, ¶ 19, 478 P.3d at 736; see also LaFleur, ¶ 39, 479 P.3d at 881 (“[T]he focus is on whether the parties intended to enter into a relationship that is marital in nature.”). Addressing this “key question,” Hogsett, ¶ 49, 478 P.3d at 724, the court “found for the reasons stated on the record that . . . Bishop failed to establish that she and [the decedent] intended to enter a marital relationship, sharing a life together as spouses in a committed, intimate relationship of mutual support and mutual obligation.” Thus, based on the record, we reject Bishop’s 
 13 contention that the court did not apply the proper legal standards under Hogsett, Estate of Yudkin, and LaFleur. ¶ 28 Because the record shows that the court applied the correct legal standards and, absent the relevant transcripts, we presume the court’s ruling on the merits was correct, we affirm the court’s finding of no common law marriage between Bishop and the decedent. IV. Disposition ¶ 29 The orders are affirmed. JUDGE TOW and JUDGE KUHN concur.