22CA1894 Peo v Gresham 06-26-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1894
Larimer County District Court No. 16CR1890
Honorable Stephen J. Jouard, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Michael Gresham,

Defendant-Appellant.

ORDER AFFIRMED

Division VII
Opinion by JUSTICE MARTINEZ*
Lipinsky and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 26, 2025

Philip J. Weiser, Attorney General, Sonia Raichur Russo, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

James West, Alternate Defense Counsel, Longmont, Colorado, for Defendant-
Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Michael Gresham, appeals the postconviction court's denial of several claims raised in his Crim. P. 35(c) motion. We affirm.

## I.     Background

¶ 2     Gresham drove from Ohio to Colorado with two companions to meet a Colorado drug dealer. Gresham and his companions met the drug dealer in a parking lot where one of the companions shot and killed the drug dealer. The three men took the drug dealer's car, dumped his body, and started driving their vehicle and the drug dealer's vehicle back to Ohio. They were pulled over in Illinois, and police found evidence of the murder and drugs in the vehicles. Gresham was twenty years old at the time.

¶ 3     Gresham was initially charged with first degree murder, aggravated robbery, and various other counts. He pleaded guilty to second degree murder and aggravated robbery in exchange for the dismissal of the remaining counts. The district court sentenced Gresham to consecutive terms for the two offenses, resulting in an aggregate sentence of fifty-seven years in the custody of the Department of Corrections (thirty-six years for second degree murder and twenty-one years for aggravated robbery).

¶ 4    Gresham then filed a Crim. P. 35(c) motion challenging his conviction and sentence.  As relevant here, he argued in the motion that his plea was not knowing or intelligent and his sentence violated the Equal Protection Clause and the Eighth Amendment.  The postconviction court held a hearing and denied the motion.

¶ 5    Gresham appeals.

## II.    Gresham's Plea

¶ 6    We review de novo the postconviction court's ruling that Gresham's plea was constitutionally valid.  *Medina v. People*, 2023 CO 46, ¶ 15.  To the extent that our inquiry requires us to review the court's factual findings, we defer to those factual findings if they are supported by the record.  *Id.*

¶ 7    At the outset, we reject Gresham's argument that the postconviction court failed to rule on the propriety of his plea in denying his motion.  In a footnote in its written order, the postconviction court explained that it "determine[d] based upon the record that [Gresham] was, in fact, properly advised of his rights . . . and that his guilty plea . . . was voluntary and intelligently made."  It is of no significance that this determination appeared in a footnote — the postconviction court clearly rejected

Gresham's challenge to his plea. We now turn to the propriety of that rejection.

¶ 8 Gresham argues that his plea was not knowing or intelligent because the advisement court did not thoroughly explain the mens rea elements of the offenses to which he pleaded guilty. Second degree murder requires that the defendant knowingly causes the death of another person. § 18-3-103(1)(a), C.R.S. 2024. As relevant here, aggravated robbery requires that the defendant (1) knowingly takes a thing of value from the victim by force, threat, or intimidation; and (2) in doing so, knowingly wounds or strikes the victim or puts the victim in reasonable fear of bodily injury. §§ 18-4-301(1), -302(1)(b), C.R.S. 2024.

¶ 9 Gresham concedes that he was advised about these mens rea elements before he pleaded guilty to them. He nevertheless argues that had he gone to trial, the prosecution would have argued that he was guilty as a complicitor, and therefore the advisement court had to explain the legal doctrine of complicity to render his plea knowing and intelligent. We disagree.

¶ 10 Gresham does not dispute that there was a factual basis for his plea. Nor does he dispute that his advisement satisfied Crim. P.

11's requirements. He cites no authority for the proposition that an advisement that satisfies Crim. P. 11 is nevertheless constitutionally infirm if it does not inform the defendant of the theory of liability the prosecution might pursue at trial, and we are aware of none.

¶ 11    Rather, due process requires only that the defendant be advised of the true nature of the charges against him, including an explanation of the elements of the offense to which the defendant is pleading guilty. *See People v. Cabral*, 698 P.2d 234, 235 (Colo. 1985); Crim. P. 11(b). The advisement court provided such an explanation to Gresham. We therefore conclude that Gresham's guilty plea was knowing and intelligent, and the postconviction court properly denied his claim alleging that he was not properly advised.

## III.    Gresham's Sentence

¶ 12    We review the postconviction court's denial of Gresham's claims challenging his sentence as a mixed question of fact and law, deferring to the court's factual findings that have record support and reviewing the court's legal conclusions de novo. *See People v. Pendleton*, 2015 COA 154, ¶ 7.

¶ 13 As we understand it, Gresham's argument challenging his sentence is based on the Equal Protection Clause and the Eighth Amendment. Gresham posits that the Eighth Amendment prohibits de facto life without the possibility of parole (LWOP) sentences for juvenile offenders. Because he was twenty at the time of the offenses and twenty-one at sentencing, Graham contends he was similarly situated to a juvenile offender. Thus, according to Gresham, the Equal Protection Clause requires that the prohibition on de facto LWOP sentences for juvenile offenders be extended to him. Gresham also contends that he is entitled to a more "meaningful" proportionality review than the abbreviated review he received, but he does not identify the reason why he believes he is entitled to a more "meaningful" review. Because Gresham correctly concedes that "the state of the law now" is that proportionality review does not apply to aggregate sentences like his, we infer he is arguing that he is entitled to a more "meaningful" review for the same reason that he argues the prohibition on de facto LWOP sentences for juvenile offenders should be extended to him. In other words, a more "meaningful" proportionality review could be

the mechanism that protects him from an unconstitutional de facto LWOP sentence.

¶ 14　We need not consider whether the Equal Protection Clause and Eighth Amendment combine to produce the result Gresham claims because we disagree with the fundamental assumption of his arguments.  Gresham's arguments assume — and require — that he received a de facto LWOP sentence.  In our view, however, he did not receive a de facto life sentence.

¶ 15　A de facto LWOP sentence is one lacking a meaningful opportunity for release within the defendant's natural lifetime.  *See People v. Lucero*, 2013 COA 53, ¶ 12.  Gresham's sentence afforded him a meaningful opportunity for release within his natural lifetime.

¶ 16　Gresham will be statutorily eligible for parole after serving seventy-five percent of his fifty-seven-year sentence, after about forty-three years.  *See* § 17-22.5-403(2.5)(a), C.R.S. 2024 (establishing parole eligibility after seventy-five percent of the sentence has been served for second degree murder and aggravated robbery).  He was twenty-one at the time of sentencing and received almost two years of credit for time served (694 days).  Thus, under the parole statute, he will be parole eligible no later than age sixty-

three.  Also, the postconviction court found that, considering "earned time . . . [,] Gresham is likely to be released on parole sometime in his 50's."

¶ 17    Based on Gresham's statutory parole eligibility date and the postconviction court's unchallenged finding that he will likely be released in his fifties, we conclude that Gresham has a meaningful opportunity for release within his natural lifetime.  Consequently, he did not receive a de facto LWOP sentence.

¶ 18    This conclusion is fatal to Gresham's arguments.  Without a de facto LWOP sentence, there is no purported Eighth Amendment prohibition that the Equal Protection Clause could extend to Gresham, even by way of a more "meaningful" proportionality review.  We therefore conclude that the postconviction court properly denied Gresham's challenge to his sentence.

## IV.   Disposition

¶ 19    The postconviction court's order is affirmed.

JUDGE LIPINSKY and JUDGE LUM concur.